# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 10-1484

**PATRICK E. PHILLIPS, JR., ET AL.**

**VERSUS**

**G & H SEED CO., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, DOCKET NO. 00-C-2220-D
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
John D. Saunders, Judges.

**AFFIRMED**.

**Elwood C. Stevens, Jr.**
**Domengeaux Wright Roy & Edwards, LLC**
**556 Jefferson Street, Suite 500**
**P.O. Box 3668**
**Lafayette, LA 70502-3668**
**(337) 233-3033**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
   **Patrick E. Phillips, et al.**

**Jerald Edward Knoll, Sr.**
**The Knoll Law Firm, LLC**
**P.O. Box 426**
**Marksville, LA 71351-0426**
**(318) 253-6200**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
   **Patrick E. Phillips, et al.**

**Andre' F. Toce**
**The Toce Firm, A.P.L.C.**
**969 Coolidge Blvd.**
**Lafayette, LA 70503**
**(337) 233-6818**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
**Patrick E. Phillips, et al.**

**Gary A. Bezet**
**Robert E. Dille**
**Carol L. Galloway**
**Allison N. Benoit**
**Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.**
**II City Plaza**
**400 Convention Street, Suite 700**
**P.O. Box 3513**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**Bayer CropScience LP, Michael Redlich, G&H Seed Company, Inc.,**
**Crowley Grain Drier, Inc., Nolan J. Guillot, Inc., and Mamou Rice Drier**
**and Warehouse, Inc.**

**Terrence D. McCay**
**Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.**
**One Lakeshore Drive, Suite 1150**
**Lake Charles, LA 70629**
**(337) 430-0350**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**Bayer CropScience LP, Michael Redlich, G&H Seed Company, Inc.,**
**Crowley Grain Drier, Inc., Nolan J. Guillot, Inc., and Mamou Rice Drier**
**and Warehouse, Inc.**

**Raymond P. Ward**
**Adams and Reese, L.L.P.**
**701 Poydras Street, Suite 4500**
**New Orleans, LA 70139**
**(504) 581-3234**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**Bayer CropScience LP and Michael Redlich**

**Michael T. Pulaski**
**McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, PC**
**195 Greenbriar Blvd., Suite 200**
**Covington, LA 70433**
**(337) 831-0946**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**Allianz Global Risks and US Insurance Company**

**COOKS, Judge.**

This is an appeal from a judgment in a civil action which cast costs against the prevailing party. The Defendants, Bayer CropScience, LP, and its employee, Michael Redlich, were ordered to pay court costs of $326,307.09, even though it garnered a favorable verdict in the court of appeals and a subsequent denial of writs by the Louisiana Supreme Court. *Phillips v. G & H Seed Co.*, 08-934 (La.App. 3 Cir. 4/8/09), 10 So.3d 339, *writ denied*, 09-1504 (La. 10/30/09), 21 So.3d 284. "A 'costs' judgment against a defendant is a separately appealable judgment where the amount of expert witness fees taxed as costs are substantial and where, following a judgment on the merits, the trial court takes the matter of costs under advisement and conducts additional hearings on such matter." *Hoyt v. State Farm Mut. Auto. Ins. Co.*, 623 So.2d 651 (La.App. 1 Cir. 1993), (citing *Louisiana Resources Company v. Fiske*, 343 So.2d 1219 (La.App. 3 Cir.1977).

### FACTS AND PROCEDURAL HISTORY

This case has a long history, including two prior appeals and a concurrent appeal. We set forth the relevant facts and procedural history in the concurrent appeal, *Phillips v. v. G & H Seed Co.*, 08-934 (La.App. 3 Cir. 5/11/11), ___ So.3d ___:

> This protracted and contentious litigation had its genesis in the late 1990's, when Bayer CropScience LP and its employee, Michael G. Redlich, marketed the insecticide ICON in Louisiana. Certain companies purchased ICON, applied it to rice seed, and sold the ICON-coated rice seed to rice farmers in Louisiana. Many of these rice farmers also raised crawfish in their rice ponds.
>
> Essentially, Plaintiffs allege the ICON coated rice seed was introduced into the rice fields/crawfish ponds of South Louisiana in 1999. The active ingredient in ICON was fipronil, which is a chemical used to control arthropods and is used in a variety of compounds to control insects such as termites, fleas, mole crickets and the rice water weevil. According to the plaintiffs, the introduction of ICON killed and/or sterilized the crawfish, both wild and pond-raised. According to the plaintiffs, as a result of the contamination, Louisiana's annual farm-raised crawfish crop dropped from over 60 million pounds to

approximately 10 million pounds.

Defendants argued the use of ICON is not incompatible with crawfish farming, provided the farmer allows for a suitable waiting period between planting the ICON-treated rice seed and introducing crawfish tot he rice field. Defendants also argued the record breaking drought in Louisiana during the time in question was the reason for the decline in crawfish production.

In 1999, a class action lawsuit was filed on behalf of all crawfish farmers in Louisiana, *Craig West, et al. v. G & H Seed Co., et al.*, No. 99-C-4984-A in the Twenty-Seventh Judicial District Court, Parish of St. Landry. That lawsuit was eventually settled.

Thereafter a class action suit was initiated on behalf of Patrick Phillips and Atchafalaya Processors, Inc, individually and on behalf of all others similarly situated. Essentially, this class action suit was brought by crawfish buyers, processors and resellers. Named as Defendants were Bayer CropScience LP and Michael Redlich. Also named as Defendants were the companies who purchased the ICON, applied it to the rice seed, and sold it to the farmers: G&H Seed Co., Inc., Crowley Grain Drier, Inc., Delhi Seed Co., Inc., Terral Seed Co., Inc., Mamou Rice Drier & Warehouse, Inc.

Plaintiffs eventually abandoned their efforts to certify either a plaintiff or defendant class. Thereafter, through a series of supplemental and amending petitions, the matter proceeded as a cumulation of individual actions comprising the claims of approximately 72 individual crawfish buyers, resellers and processors.

Bayer filed an exception of no cause of action, contending in order to maintain a delictual action against a manufacturer for property damage caused by a defective product, the claimants must have some proprietary interest in the damaged property. Bayer argued that since none of the plaintiffs in this litigation are crawfish farmers, and none of them had any ownership in the damages crop, they could not demonstrate the required proprietary interest. Plaintiffs argued there were existing joint ventures between the crawfish farmers and buyers/processors during the time the crawfish crop was damaged. The trial court overruled the exception, rejecting the *per se* exclusionary/proprietary interest rule of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134 (1927), in favor of the policy driven duty/risk analysis espoused in *PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058 (La.1984). The trial court found in applying a duty-risk analysis, the law extended a remedy to the buyer/processor plaintiffs. Bayer applied for writs to this Court. Writs were denied.

Because of the enormity of trying all 72 actions at once, the trial court determined it would be best to try the actions of four plaintiffs, three to be chosen by the plaintiffs and one chosen by the defense. This

number was eventually reduced to three plaintiffs: Patrick Phillips (d/b/a Phillips Seafood), James Bernard (d/b/a J. Bernard Seafood Processors, Inc.), and Lisa Guidry (d/b/a Guidry's Crawfish).

After a full trial on the merits, Plaintiffs filed a Motion for Directed Verdict on whether the Defendants duty extended to these buyer/processor plaintiffs. Finding there was an "ease of association from farmer to wholesale" such that farmers and processors are "inextricably interwoven and symbiotic in their relationships," the trial court granted the Motion for Directed Verdict. The jury then returned a verdict in favor of each of the three plaintiffs, assigning 94% fault or causation to Bayer, 1% to Bayer salesman Michael Redlich, and 4% to the drought that occurred in South Louisiana. It awarded $900,000 to plaintiff Phillips, $750,000 in damages to plaintiff Bernard, and $100,000 to plaintiff Guidry.

Defendants timely filed a Motion for Judgment Notwithstanding the Verdict, New Trial, and Remittitur. The motions were denied and Defendants filed an appeal with this Court.

A five judge panel of this Court reversed the trial court's directed verdict on scope of duty and set aside the jury's verdict. *Phillips v. G & H Seed Co.*, 08-934 (La.App. 3 Cir. 4/8/09), 10 So.3d 339 (hereafter referred to as *Phillips I*). The majority reasoned that since "the plaintiffs in this case failed to prove a proprietary interest in the crawfish crop destroyed by the use of ICON. . . . the plaintiff's cause must fail." *Id.* at 344. The majority did not undertake a duty-risk analysis or apply the *PPG* factors as done by the trial court. Instead it applied the *per se* exclusionary/proprietary interest rule of *Robins Dry Dock*. Plaintiffs also note the majority did not explain what would be "sufficient" to establish a proprietary interest under Louisiana law.

Judge Saunders dissented from the majority opinion, finding it contradicted the Louisiana Supreme Court's finding in *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La. 1989), that "the *PPG* case abrogat[ed] the rule that flatly prohibited recovery for intangible economic loss produced by negligent conduct." Judge Saunders found "the only conclusion a reasonable juror could reach was that Bayer had reckless disregard for the potential ramifications to this state's crawfish industry, as a whole, when crawfish farmers used ICON." *Phillips I*, 10 So.3d at 345. This callousness, Judge Saunders concluded, was sufficient to support the trial court's directed verdict on scope of duty. Further, Judge Saunders noted that even if one interprets *PPG* as the majority does, it was factually distinguishable from the present case. In *PPG*, the plaintiff had an alternative source to get the natural gas it needed, whereas the buyers/processors here had no other source for the crawfish they contracted to receive from the crawfish farmers. This interwoven, symbiotic relationship between crawfish farmers and crawfish buyers/processors was different than that present in *PPG*.

Plaintiffs Application for Rehearing to this Court was denied. Similarly, the application for a Writ of Review to the Louisiana Supreme Court was denied. *Phillips v. G & H Seed Co.*, 09-1504 (La. 10/30/09), 21 So.3d 284. Following these denials, Bayer filed Motions for Summary Judgment against all the remaining buyer/processor plaintiffs based on the proprietary interest requirement espoused by this Court's opinion in *Phillips I*.

While the appeal in *Phillips I* was pending, Plaintiffs filed a motion to tax their trial-court costs against Defendants. That motion remained dormant until after the decision in *Phillips I*, when Defendants filed their own motion to tax trial-court costs. Plaintiffs responded by re-urging their motion to tax costs.

Both motions were heard on May 10, 2010. At the hearing the trial court expressly stated he was taking judicial notice of all proceedings and of "everything that was on the record." The trial court, in lengthy oral reasons for judgment, determined that based on its evaluation of the overall circumstances presented and the conduct of the parties involved, fairness and equity required that Defendants pay all costs. Specifically, the trial court gave the following reasons for this conclusion:

> The big question is, ultimately, what's equitable? I look at [La.Code Civ.P. art.] 1920. . . the trial court may assess costs in any equitable manner and its assessment will not be reversed on appeal, but as Mr. Dille says, its not unfettered discretion, in the absence of an abuse of discretion. I understand that Judge Domengeaux pretty much said, as I noted earlier, there's not much of a threshold that I have to reach in exercising my discretion, but it does say what's equitable. I find both sides, as I said, skirted right at the edge of the envelope sometimes. That's what good lawyers do. That's how new law is made. I indicated in – I took the lawyers into conference. I want to state this for the record for the Court of Appeal to indicate to them that my lean at the time after reading everything but before arguments where I would leave it open to be convinced otherwise was to let each side just pay their own costs. There was litigation – it was expensive. And if you went at the level that needed this case to be presented, it's going to be expensive. In considering the equities involved, I understand both sides are asking for about the same amount. I awarded, and I'll be candid, I awarded costs against the defendants because the plaintiffs were the prevailing party. I never gave a second thought to whether there was any equity involved or not, just said they lost, they get to pay. The shoe is on the other foot as it were now. And defendants, to their credit, didn't say, wait, wait, wait, wait. They knew they had time to look at what the costs would be

and to make the arguments. Plaintiffs are out of time now. It's here. I have to determine what's equitable. I wasn't impressed with Alfred E. King's top-down economic application theory. I wasn't sometimes impressed with this Court ordered discovery. As I recall, seventeen people lost their cases because discovery wasn't produced. Discovery on a motion to compel by the defendants against the plaintiffs. I dismissed those cases with prejudice. It's easy to point the fingers. It's a lot harder to determine what equity is. I was offended by the letter to the scientific journal. I was offended by the accurate but misleading response when asked if any counsel knew of this correspondence. I was not pleased at all. That's when I think the edge got crossed. I wasn't happy when Mr. Toce threw his pen on that table because he got angry with one of my rulings. My goodness, what lawyer worth his salt wouldn't get angry at a judge when he – looking the way you guys looked and you don't get your way. But you don't get to behave poorly. But behaving poorly and throwing a pencil is a little bit different than some of the actions I saw. I'm struggling with doing something that is almost never done. You know what's coming. Granting costs or casting costs against the prevailing party. But I don't want to do all the costs of the plaintiff which is why I was looking for some form of barometer as to the activities that you take issue with, some of which I agree with. I would have liked to have known what effort was required to combat and I don't have that benefit. I don't want to postpone this. It's time to get it behind us. I'm coming to the end. I believe when it's all said and done that the appeal in *Wiltz* is going to remain as it's posited right now. I believe when it's all said and done that the Fifth Circuit is likely to rule without certifying the question out of the federal court. I think this case is basically over, hard fought as it was, well presented as it was. I take all of that into consideration. I take into consideration the fact that I believe it's unfair to have three plaintiffs carrying, and I accept the 6.3 percent figure, of what started out as a class action and what was in agreement test cases, not bellwether in the technical sense because the defendants did not agree that the results of the trial would be utilized to settle all the remaining cases. But I think its just unfair to make those three plaintiffs carry the ball and I think with the appellate court, certainly under 2164, I like that, that they cast appellate costs and they certainly could have reversed me on trial costs and that looming as large as anything, I cast defendant, the prevailing party, with all costs of these proceedings.

Defendants moved for new trial, asking the trial court to strike the cost of certain depositions not used at trial. The trial court refused to strike the cost of those depositions. At the new trial hearing, the trial court expounded on its reasons for assessing Defendants with all costs:

Now I'm going to tell you once again my reason for that ruling. . . . I understand this was hard fought litigation by hardball lawyers, but what ultimately caused me to cast the costs to the prevailing party in this

particular instance was the behavior in some sense by the defendant with regard to Peter McCahon. I was quite taken aback by that and to me that was consistent with the behavior throughout these proceedings. Mr. McCahon was said to be unavailable for trial and he's way, way too important to come all the way to Opelousas. He's got to be in Germany somewhere because he's the president of Bayer CropScience. And then when things didn't go quite as well as might have been expected he shows up for trial. I didn't like that. I did not like the methods utilized to attempt to debunk Dr. Schlenk with a peer-reviewed published article and then the response that I got, which I found to be less than forthcoming. That's two of the reasons. I did not like that Dr. Roman Weil or whatever his name was, the PhD from Chicago was being called down here to – you can say what you want Mr. Dille and I know we disagree, but my impression at the time and its still my impression, that he was brought down here to tell me how I should apply the law in *Daubert* because he was not a *Daubert* expert economist, he was a *Daubert* expert on *Daubert* and I found that was a waste of time, effort and money and I found that it was overreaching by a defendant who had resources far greater than those who were presenting. I did not like that the young lady, I can't even recall her name, the third bellwether, the smallest claim of the three bellwethers was served with a lawsuit in the middle of this trial, that her husband was subpoenaed and served with a lawsuit the day before he testified. I thought that was done solely for the purpose of intimidation and it offended me greatly. I find then that many of these costs could have been lessened by less than – less aggressive measures by the defendant. So for those reasons, along with all the reasons I mentioned at new trial – at the original trial on the fixing of costs, that's why I did what I did and exercised the discretion, and again, I did not think it was fair to have three plaintiffs bear the burden of everybody when basically the way I looked at this and the way it developed was there was a general agreement that we would try these three and attempt to do something.

Defendants appealed the trial court's assessment of costs, asserting the following assignments of error:

> 1. The trial court erred in failing to award the prevailing defendants their trial costs, and instead ordering the prevailing defendants to pay the losing plaintiffs' costs.
>
> 2. In the alternative, in ruling on defendant's motion for new trial, the trial court erred in refusing to strike from the cost award the $27,792.60 spent on depositions not used at trial.

**ANALYSIS**

Louisiana Code of Civil Procedure article 1920 provides for the taxing of costs after trial. While it is the general rule to tax the party cast in judgment, the article

affords the trial court discretion in the matter, providing in pertinent part: "[e]xcept as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." Louisiana Code of Civil Procedure article 1920 has been consistently interpreted to grant the trier of fact great discretion in apportioning costs as it deems equitable under the circumstances. *See Doe v. Roman Catholic Church*, 94-1476 (La.App. 3 Cir. 5/3/95), 656 So.2d 5, *writ denied*, 95-2076 (La.11/13/95), 662 So.2d 478; *Gauthier v. Wilson*, 04-2527 (La.App. 1 Cir. 11/4/05), 927 So.2d 383, *writ denied*, 05-2402 (La.3/31/06), 925 So.2d 1258; *Westley v. Allstate Ins. Co.*, 05-100 (La.App. 5 Cir.5/31/05), 905 So.2d 1127; *Mitter v. Touro Infirmary*, 03-1608 (La.App. 4 Cir. 4/21/04), 874 So.2d 265; *Hunter v. Bossier Medical Center*, 31,026 (La.App. 2 Cir. 9/25/98), 718 So.2d 636. This court in *Johnson v. Bucyrus-Erie Company*, 476 So.2d 1074, 1075 (La.App. 3 Cir. 1985), noted that the trial court's "discretion is not unbridled but is restricted to the realm of what is equitable." We further instructed that "[w]hat is 'equitable' can only be determined on a case-by-case basis which necessarily involves a review of the facts involved." *Id.*

While it is the general rule under La.Code Civ.P. art. 1920 for costs to be assessed against the party cast in judgment, "[i]n some situations, the best interests of justice are served by casting the prevailing party with all costs." *Courtney v. Winn-Dixie Louisiana, Inc.*, 447 So.2d 504, 510 (La.App. 5 Cir.), *writ denied*, 449 So.2d 1359 (La.1984). The courts have given instruction on what is required to cast the prevailing party with costs, stating that a prevailing party may be taxed with costs "if that party in some way incurred additional costs pointlessly or engaged in other conduct which would equitably justify the prevailing party being assessed." *Williams v. Wiggins*, 26,060, p. 6 (La.App. 2 Cir. 8/17/94), 641 So.2d 1068, 1074; *see also Ford*

*v. State Dept. of Public Safety*, 00-1546 (La.App. 3 Cir. 6/5/02), 819 So.2d 1156, 1157; *Westley v. Allstate Ins. Co.*, 05-100 (La.App. 5th Cir.5/31/05), 905 So.2d 1127; *Rathey v. Priority EMS, Inc.*, 04-0199 (La.App. 4 Cir. 1/12/05), 894 So.2d 438, *writ denied*, 05-789 and 05-802 (La.5/6/05), 901 So.2d 1107, 1108; *Morrison v. Gonzalez*, 602 So.2d 1104 (La.App. 1 Cir.1992).

Although an exception to the general rule, the jurisprudence contains numerous cases where the prevailing party was cast with some or all costs. *See Trahan v. Asphalt Associates, Inc.*, 01-311 (La.App. 3 Cir. 10/17/01), 800 So.2d 18; *Doe v. Roman Catholic Church*, 656 So.2d 5; *Fanara v. Big Star of Many, Inc.*, 558 So.2d 316 (La.App. 3 Cir. 1990); *Johnson v. Bucyrus-Erie Company*, 476 So.2d 1074; *Lee v. Constar, Inc.*, 05-633 (La.App. 5 Cir. 02/14/06), 921 So.2d 1240, *writ denied*, 06-880 (La.6/2/06), 929 So.2d 1263 (wherein appellate court affirmed trial court's casting of all costs against prevailing party based strictly on trial court's vast discretion, even without finding the prevailing party incurred additional costs pointlessly or engaged in other conduct justifying the assessment of costs against it); *Wendelboe v. Exxon Shipping Co.*, 08-1846 (La.App. 1 Cir. 2/13/09), 6 So.3d 882; *Courtney v. Winn-Dixie Louisiana, Inc.*, 447 So.2d 504.

The record before us indicates the trial court in this case was well aware of the law applicable to the assessment of costs, and specifically noted he was doing something that "is almost never done," i.e., assessing all costs against the prevailing party. The record further establishes the trial court used its discretion to cast costs in the manner it did because it believed Defendants' counsel engaged in conduct which would equitably justify the assessment of costs against the prevailing party.

It should be noted that the trial court presided over this case for ten years and was fully aware of all aspects of the litigation. The trial court assessed costs in this

matter bases on its "sense of equity." As set forth earlier in the opinion, the trial court specifically listed a number of examples of improper behavior by Defendants' counsel during these proceedings. Not surprisingly, Defendants take exception with the trial court's characterization of these acts. We will examine them in turn.

*A. Letter to the Scientific Journal.*

The trial court stated he was "offended" by a letter written by Defendant Bayer's in-house counsel to the editor of a scientific journal, the Journal of Environmental Toxicology. Apparently, Bayer became aware Dr. Dan Schlenk, plaintiffs' retained environmental toxicology expert, was submitting an article for publication based largely on a report he prepared for Plaintiffs in advance of trial. Bayer's in-house counsel submitted a letter seeking to repudiate Dr. Schlenk's proposed article based largely on the deposition taken of Dr. Schlenk by Defendants' trial counsel. The journal initially pulled the article from publication until the scientific anomalies claimed in Bayer's letter were found not to exist.

When this letter to the scientific journal became a subject at trial during Dr. Schlenk's testimony, counsel for Defendants initially denied its existence. This trial court referenced this "misleading response when asked if any counsel knew of this correspondence." Defendants contend nothing Bayer "did in connection with this letter increased cost or vexatiousness of the Phillips litigation." The record would indicate otherwise. As Plaintiffs note, the jury stood idle for an entire day and an *instanter* deposition of Dr. Schlenk was required in the middle of trial. Dr. Schlenk's testimony dragged on for days, requiring him to return to California over a weekend for a previously scheduled event. Further, the editor of the Journal of Environmental Toxicology had to be located to furnish a copy of the letter, which then necessitated a special hearing held in the middle of the trial concerning its admissibility. Plaintiffs

stress that the similarity of the points raised in the letter and the points probed in Dr. Schlenk's deposition demonstrate that Defendants were undoubtedly aware of the letter's existence. The trial court agreed and found the answers by Defendants counsel were less than forthcoming at trial, and added unnecessary delay and expense to an already voluminous and complex trial.

B.   *Collection Efforts Against the Guidrys.*

Defendants acknowledge that "[d]uring the *Phillips* trial, co-defendant G&H Seed Company undertook an ill-timed effort to collect a debt allegedly owed by plaintiff Lisa Guidry and her husband." However, Defendants maintain these efforts were undertaken through a lawyer not involved in this litigation, and without its knowledge. Plaintiffs counter that at the time the collection efforts were commenced against the Guidrys, the same attorneys were in fact counsel for all Defendants, including G&H Seed Company. The trial court did not accept Defendants self-serving assertion that they were totally disassociated with the "ill-timed" collection efforts, particularly considering that Mr. Guidry was subpoenaed the day before he was scheduled to testify. The trail court specifically noted he believed this was done solely for intimidation purposes.

C.   *Unnecessary Depositions.*

The trial court "didn't like" that on the eve of trial, Defendants informed the court and Plaintiffs that Peter McCahon, a president of Bayer, would not be available for trial. Defendants informed the trial court that it would be noticing Mr. McCahon's video deposition in lieu of his testimony. This required the trial court and Plaintiffs' counsel to expend considerable time in reviewing the video to determine the permitted scope and admissibility of the deposition. Plaintiffs presented excerpts of Mr. McCahon's deposition in its case in chief, only to have Mr. McCahon arrive near the

end of trial and attempt to testify live.

The trial court also noted the last minute insertion of the deposition and testimony of Dr. Roman Weil contributed nothing to the trial and was, in its view, simply an attempt to add to the already voluminous record. The trial court specifically felt this last-minute addition "was a waste of time, effort and money and . . . was overreaching by a defendant who had resources far greater than those [of plaintiffs] who were presenting." The last minute noticing of Dr. Weil's deposition required Plaintiffs' attorneys to go to Dallas days before the trial to take an impromptu discovery deposition, followed immediately by a video trial deposition.

Defendants argue that they noticed and took the depositions in good faith, but acknowledge the trial court felt differently. Defendants do not quibble with those findings on appeal. Instead, they allege that, in the context of such a massive litigation, "two depositions are not an equitable reason to shift *all* costs to the prevailing party." This argument would hold more merit if these two unnecessary depositions were the only reasons given for the trial court's shifting of costs to the Defendants. However, the trial court listed other reasons for its decision to cast Defendants for all costs, and specifically noted the actions in reference to Mr. McCahon were "consistent with the behavior throughout these proceedings."

Defendants also argued that because Plaintiffs were not able to separate the exact amount of additional expenses due to the Mr. McCahon and Dr. Weil situations, the trial court abused its discretion in awarding all costs to Plaintiffs. A review of the record indicates the trial court did broach the subject with counsel for Plaintiffs concerning whether they could carve out those particular expenses. Plaintiffs candidly acknowledged it would be difficult, if not impossible, to determine the exact itemization of these expenses. Defendants cite no case law which requires the trial

-11-

court to itemize particular expenses which are required by specific acts. Rather, the trial court appears to have concluded, in the use of its statutorily authorized discretion, that the overall conduct of Defendants established a pattern of overreaching and unduly aggressive behavior that justified its assessment of costs. We cannot say this constituted an abuse of the trial court's discretion.

D.    *Overall Aggressive Behavior.*

Defendants assets that both sides were equally aggressive in representing their clients interests, and penalizing only one side for aggressiveness is inequitable. The trial court noted the aggressive actions by both sides, stating it "was hard fought litigation by hardball lawyers."

A review of the trial court's reasons clearly indicate while Plaintiffs' counsel engaged in an aggressive pursuit of its clients' interests, the trial court did not find the actions of both sides counsel were "equally" aggressive. The trial court found counsel for Defendants' actions crossed the line from aggressive advocacy to certain unnecessary and delitorious actions. The trial court specifically noted a difference between the actions of Defendants' counsel and those of counsel for Plaintiffs. While noting he was not pleased with that one of Plaintiff's counsel threw a pencil because of his disappointment in one of the trial court's rulings, the trial court stated "behaving poorly and throwing a pencil is a little bit different than the actions I saw." The trial court, in discussing counsel for Defendants' denial of knowledge of the letter sent to the scientific journal, specifically stated this was when it believed "the edge got crossed."

E.    *Size of the Parties.*

Defendants point to the fact that the trial court suggested he took into account the parties' respective size and ability to pay into consideration when apportioning

costs. The trial court stated:

> [A]t the end of the day, I think size can matter and that's what I'm asking you. We've got three plaintiffs who one of them for sure, Ms. Guidry, made [$48,000] as I recall one year. If I slip her with *in solido* [$350,000] judgment, she's going into bankruptcy. So I think size is a consideration. It deals with equitableness.

Defendants note that any equitable considerations taken into account when assessing costs under La.Code Civ.P. art. 1920 do not automatically translate into "[h]e pays who can best afford it." *Henderson v. Louisiana Downs, Inc.*, 566 So.2d 1059, 1064 (La.App. 2 Cir. 1990). Plaintiffs agree that "equity" does not translate into the party in the superior economic position automatically pays.

However, contrary to Defendants' assertion in brief, it is clear the trial court did not choose to award all costs against them "simply because of [their] ability to pay." The trial court set forth numerous examples of behavior by Defendants' counsel that it was not happy with. He also addressed the issue of "size" in the context of Defendants initiating several legal maneuvers because it possessed "resources far greater than [plaintiffs]." We find the trial court's consideration of size was one of several valid considerations in addressing the equities involved.[1]

*F.    Conclusion.*

Our review of the record establishes the trial court believed that, under La.Code Civ.P. art. 1920, equitable considerations required that costs be assessed in this case against the prevailing party. Specific, multiple reasons were given by the trial court,

---

[1] In addressing possible alternative costs assessments the trial court could have ordered in this case, Defendants in brief posit that the "trial court could have allocated the costs *pro rata* or *pro tanta* against all plaintiffs – not just the three trial plaintiffs. Such a ruling would have been equitable because the trial of these three plaintiffs' cases was undertaken for the benefit of all plaintiffs, not just the three." This "helpful" suggestion by Defendants ignores the fact that Defendants refused to make the judgment in the trial of the three plaintiffs binding on the remaining plaintiffs. Further, despite the three plaintiffs being selected as "test/trial plaintiffs," Defendants insisted on conducting full discovery against and depositions of all the named plaintiffs. These discovery requests culminated in seventeen (17) plaintiffs being dismissed for failure to comply. The trial court specifically noted he was not "impressed" with these discovery requests.

as well as a general conclusion that Defendants engaged in a pattern of behavior throughout the proceedings which caused additional costs to be incurred. After reviewing the record, we cannot say the trial court abused its vast discretion in its award of costs in the instant case.

## II. *Depositions Not Used at Trial.*

In its second assignment of error, Defendants contend the trial court committed legal error in ordering them to pay Plaintiffs costs for depositions not used at trial. At the motion for new trial, Defendants pointed out that the trial court's cost award included the cost of several depositions that were not used at trial. Defendants set the costs of these depositions at $27,782.60, a figure which has not been disputed by Plaintiffs.

Defendants state in brief that the trial court's "reasons for taxing the costs of these depositions do not indicate any intention to sanction Defendants or their counsel for some form of gross misconduct." We do not agree with this interpretation of the trial court's reasons given at the hearing. The trial court's gave the following oral reasons for keeping the costs of those depositions:

> I'm going to leave those in and I'm going to leave those in and I'll – the reason is this litigation in the wide panorama that it covered and the tortious route to get to get to trial commenced as a class action, then moved to mass joint, then went to three ostensible bellwethers and *so a lot of these cost factors were the result of actions on discovery and the reason why I'm casting the costs as I have*, I'll make mention of that in a moment, but I'm going to leave those costs in.

The trial court's reasons indicate he taxed the depositions in question as costs because it fell within the same pattern of behavior that led it to assess costs against Defendants.

Moreover, Defendants' argument that the trial court was "without legal authority to tax the cost of these depositions" is incorrect. This Court in *Brown v. American Honda Motor Co., Inc.*, 97-599 (La.App. 3 Cir. 12/3/97), 704 So.2d 1234,

in affirming the trial court's assessment of costs, which included depositions not used at trial, instructed:

> Partially at issue in the case *sub judice* is whether costs of depositions, not used at the trial, can be assessed against Honda. Clearly, under La.R.S. 13:4533 and *Boutte v. Nissan Motor Corp.*, 94-1470 (La.App. 3 Cir. 9/13/95), 663 So.2d 154, they cannot. However, it is quite obvious that the trial court, in awarding costs to the Browns, that included the costs of depositions which were not used at trial and which are normally not recoverable, *intended the award of costs to be a sanction for the misconduct of Honda's counsel in the trial and the damage it caused to the Browns.* The trial court was obviously motivated by the equities of this situation and the clear injustice that would result to the Browns by permitting Honda to totally escape liability for its counsel's nefarious conduct in the trial court.

The trial court's reasons indicate that it awarded the cost of these depositions because it fell within the same pattern of behavior exhibited by Defendants throughout the course of these proceedings which caused additional costs to be unnecessarily incurred. Much as in *Brown*, the trial court here was motivated by the "equities of the situation," and we will not disturb its conclusion as to what costs are equitable.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Defendants-Appellants.

**AFFIRMED.**