# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-592

SHANTEL DELCO

VERSUS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20173873
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Shannon J. Gremillion, D. Kent Savoie, Candyce G. Perret, and Jonathan W. Perry, Judges.

**REVERSED AND RENDERED.**

Perry, J., dissents and assigns reasons.
Gremillion, J., dissents for the reasons assigned by Perry, J.

**Charles Brandt**
**Brandt & Sherman, LLP**
**111 Mercury Street**
**Lafayette, LA 70503**
**(337) 800-4000**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Shantel Delco**

**Joseph T. Puhekker**
**Leah B. Guilbeau & Associates**
**4023 Ambassador Caffery Parkway, Suite 100**
**Lafayette, LA 70503**
**(337) 988-7240**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **State Farm Mutual Automobile Insurance Company**

**SAUNDERS, Judge.**

This case involves an appeal from jury a trial wherein the trial court, based on the jury's verdict, found in favor of the defendant insurance company in a motor vehicle accident. As a result of the jury's verdict and judgment, the trial court assessed the insurance company's costs against the plaintiff. Before us is the plaintiff's appeal as to the propriety of the jury's verdict and resulting assessment of costs by the trial court.

**FACTS AND PROCEDURAL HISTORY:**

On July 5, 2016, in Lafayette, Louisiana, Shantel Delco (Delco) was driving a 2005 Ford F150 when Kathryn Brents pulled her 2010 Lexus from a private driveway into Delco's path causing a collision. Brents was insured by State Farm Mutual Automobile Insurance Company (State Farm).

As a result of this accident, on July 3, 2017, Delco filed suit against Brents and State Farm alleging injuries to her cervical spine and left rotator cuff, and damages for past lost wages, past medical expenses, and future medical expenses. Delco had surgery to repair the torn left rotator cuff and both she and her treating physician were expecting her to have surgery on her cervical spine, but the surgery had not been done prior to trial. Shortly before trial, State Farm stipulated to liability and Delco dismissed Brents as a party defendant.

After a three-day jury trial, the jury reached a verdict that Delco was not injured in the July 5, 2016 accident. On February 26, 2020, the trial court signed a judgment based on the verdict in State Farm's favor and assessed all costs to Delco. Delco appeals the jury's verdict and assessment of costs alleging three assignments of error. In that appeal, Delco does not allege manifest error in the jury's verdict regarding her injuries to her cervical spine given the conflicting medical evidence. Although State Farm argues for an affirmation of the trial court's judgment, it

alternatively argues for an award of reasonable damages if this court reverses the trial court relating to Delco's left shoulder injury.

## ASSIGNMENTS OF ERROR:

1. The jury was manifestly erroneous and clearly wrong in finding that the July 5, 2016 accident did not cause Delco's left shoulder injury and resulting surgery.

2. The jury erred in failing to award any damages to Delco, requiring this Court to review the record de novo and make an award of special and general damages.

3. The trial court erred in awarding costs to State Farm.

## ASSIGNMENT OF ERROR NUMBER ONE:

In her first assigned error, Delco asserts that the jury was manifestly erroneous and clearly wrong in finding that the July 5, 2016 accident did not cause her left shoulder injury and resulting surgery. We find merit in this assertion.

It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). This test dictates that a reviewing court must do more than simply review the record for some evidence that may controvert the trial court ruling. Rather, it requires a review of the entire record to determine whether manifest error has occurred. Thus, the issue before the court of appeal is not whether the trier of fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one. *Clay v. Our Lady of Lourdes Regional Medical Center*, 11-1797 (La.5/8/12), 93 So.3d 536, 543. The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La.4/3/02), 816 So.2d 270, 278-79. Where the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. *Bellard v. American Central Ins. Co.*, 07-1335 (La.4/18/08), 980 So.2d 654, 672.

*Snider v. La. Med. Mut. Ins. Co.*, 14-1964, p. 5 (La. 5/5/15), 169 So.3d 319, 323.

In this assignment of error, we first note that there is no dispute that Delco's left rotator cuff was objectively injured after the accident. Further, there is no question that State Farm is responsible for any damages from the accident. The disputed issue in this assignment of error is whether the jury had a reasonable basis to find that Delco's torn rotator cuff of her left shoulder existed prior to the July 5, 2016 accident.

Delco asserts she carried her burden to prove that the left shoulder injury was related to the accident and argues that the jury had no basis to find otherwise. She first supports this argument by pointing out that her left shoulder was pain free for up to six months prior to the accident, which is supported by the fact that she did not see any doctors or receive any healthcare of any kind from mid-January 2016 until July 5, 2016. According to Delco, relation of her shoulder injury to the accident is also supported by the fact that she was working as a sitter of a person of significant weight, and, according to the testimony of her treating physicians, she would not have been able to perform her job duties if she had a torn rotator cuff prior to the accident. Delco's duties as a private aid included such physical work as assisting patients getting in and out of bed, picking them up if they should fall, and helping them bathe and use the restroom.

Next, Delco highlights her uncontradicted medical records related to her left rotator cuff. Dr. Robert Franklin, an expert in physical medicine, ordered an MRI (magnetic resonance imaging) of Delco's left shoulder. This MRI showed that Delco had a torn rotator cuff in her left shoulder of the supraspinatus tendon. This is objective medical evidence that Delco's torn left rotator cuff existed after the accident. Dr. Franklin referred Delco to Dr. Louis Blanda, an orthopedic surgeon.

Dr. Blanda, in addressing Delco's left shoulder, testified as follows:

Q. So, [Delco] would've known her left arm was weak if she had had a torn rotator cuff prior to this motor vehicle accident?

A. I would think so; yes, sir.

Q. And is there some other singular symptom pertaining to range of motion that is affected by a torn rotator cuff?

A. Yes.

. . . .

A. The range of motion is diminished because the muscles don't work properly. The main range of motion - - It depends on what tendon is torn.

Q. Okay. So, when you have a torn supraspinatus, which is what Shantel Delco had, what's the signature deficit she was with her arm?

A. Well, the main thing is pain and weakness with the ability to lift the arm.

. . . .

A. It's called abduction; in other words, lifting it out to the side and then being able to rotate it to put it behind your head, so to speak.

. . . .

Q. So, if [Delco] had had a torn rotator cuff before July 5, 2016, she would have noticed that she couldn't put her hand behind her head, right?

A. I would think so. Again, it just depends on the severity of the tear. I mean, with the tear she had and what I saw when I examined her, and I think Dr. Franklin as well, she certainly would have noticed that.

Regarding whether this injury was caused by the accident, Dr. Blanda testified as follows:

Q. Are you the orthopedic surgeon who treated Shantel Delco for the accident of July 5, 2016?

A. I believe so; yes, sir.

Q. Do you think she needed the surgery on her left shoulder due to this accident?

A. Her left shoulder; yes, sir.

4

Dr. William Brennan, a neurosurgeon testifying for State Farm, testified as follows:

> Q.    Okay. So, you're not here today to argue about Dr. Blanda saying that [Delco] needed rotator cuff surgery as a result of the accident?
>
> A.    No.

Therefore, according to Delco, she proved, as fact, that she had a torn rotator cuff in her left shoulder after the accident. Further, Delco argues that Dr. Blanda related that injury to the accident.

Regarding the existence of the rotator cuff tear prior to the accident, Delco points out that Dr. Blanda also testified that an injury such as the one Delco objectively had post-accident would cause Delco to have "pain and weakness with the ability to lift the arm." Delco highlights the significance of this statement when looking at the medical record of Delco's October 22, 2015 visit to Dr. Charles Bowie, a surgeon, approximately 9 months prior to the accident where Dr. Bowie noted under "**Problem #2:** PAIN IN LEFT SHOULDER," that he conducted a physical examination of Delco's left shoulder and that pain "is not present on internal and external rotation of abduction when gravity is removed." Thus, Dr. Bowie physically manipulating Delco's left shoulder at that visit produced no pain. This would not be the case, given the testimony of Dr. Blanda, had the injury to her left rotator cuff been present before the accident.

Further, Delco notes that, prior to the accident, she was gainfully employed in a job requiring her to lift heavy weight. This testimony is corroborated by Dr. Blanda who opined that this could not reasonably be done with an injury such as the one Delco objectively had post-accident.

Contrarily, State Farm argues that a reasonable view of the evidence in the record exists that Delco had the left rotator cuff tear prior to the accident. State Farm

counters Delco's assertions by first pointing to the medical record of Delco's October 22, 2015 visit with Dr. Bowie wherein the records indicate that Delco "feels her left shoulder is hurting [similarly] to how her right shoulder [felt]. . . before surgery." State Farm emphasizes this statement by Delco because she had previously undergone surgery to repair a torn rotator cuff in her right shoulder.

We find that Delco's iteration regarding feeling pain in one shoulder similar to pain previously felt in another cannot reasonably be viewed as evidence that a specific injury, i.e., a torn rotator cuff, existed in her left shoulder at that time. Delco has no medical training and evidence in the record casts significant doubt whether she understood what specific medical condition she had previously in her right shoulder. Later in the record of Delco's visit to Dr. Bowie, it notes that Delco, "states that [t]his pain [is] similar to when she had 'bone spurs' in her right shoulder." In his deposition, Dr. Bowie opined that Delco did not understand exactly what she previously had in her right shoulder, as she called it "bone spurs" to him. As such, State Farm's assertion regarding Delco's statement bolstering the reasonability of the jury's finding of fact that Delco's rotator cuff was injured prior to the accident is without merit. Rather, Delco's statement is merely evidence that she felt left shoulder pain some eight to nine months prior to the accident and can only be viewed as a reasonable factual basis in that regard.

Next, State Farm denotes Dr. Bowie stating that it was "possible" that Delco had a tear in her left shoulder during that October 22, 2015 visit. According to State Farm, this evidence also provides a reasonable basis for the jury to reach its conclusion that Delco's left shoulder injury was not related to the accident.

We first note that our law is clear that "as the finder of fact, a court cannot speculate as to the vague possibilities for causation, when medical witnesses have established an event as to the probable cause of injury." *Maranto v. Goodyear Tire*

6

*& Rubber Co.*, 94-2603, 94-2615, p. 7 (La. 2/20/95), 650 So.2d 757, 762. Here, Dr. Blanda, Delco's treating physician and surgeon, related her left rotator cuff injury necessitating surgical repair to the accident. Thus, Dr. Bowie stating it is possible she had the injury prior to the accident does not rise to the level necessary to render the jury's finding reasonable on that basis.

Next, when we look to Dr. Bowie's deposition testimony regarding his expertise on shoulder issues, the following exchange took place:

> Q    In your experience - - and if this is beyond the realm of what you deal with, that's, of course fine - - do you know if someone who had a right side rotator cuff injury is more prone to getting the same sort of injury on their left side due to overuse and compensation?
>
> A    I mean, I'd defer to an orthopedist on that. I can tell you what I think, but it wouldn't be an expert opinion.

Dr. Bowie went on to say that he sent Delco to an orthopedist to look at her left shoulder at that time. Later, the following exchange took place:

> Q    If you had thought she needed shoulder surgery at that level, would you have discussed that with her?
>
> A    No.
>
> Q    Oh, you don't do - -
>
> A    I don't do shoulder surgery.
>
> Q    Okay.
>
> A    I would have referred that to an orthopedist.

It is clear from these exchanges that a reasonable fact finder would give no weight to Dr. Bowie stating that Delco "possibly" had a tear in her left shoulder when he saw her on October 22, 2015. Especially against the opinion of Delco's treating physician whom Dr. Bowie defers. Therefore, we find this evidence noted by State Farm insufficient to render the jury's finding of fact reasonable.

Moreover, we note that State Farm called Dr. Brennan who developed his opinion on Delco from a review of her medical records and one physical examination. Dr. Brennan testified that he had no "information available that [Delco] had a preexisting rotator cuff tear on [her left] shoulder." Dr. Brennan also deferred to Dr. Blanda about his treatment of the rotator cuff tear. He agreed that he was not present in court to argue about Dr. Blanda relating Delco's left rotator cuff injury and surgery to the accident.

Finally, State Farm points to medical records from a March 2012 physical therapy visit to indicate that Delco could have had a torn left rotator over three years prior to the accident because she could not lift her left arm to a full range of motion. The therapists in 2012 indicated that they were unable to assess the mobility of the shoulder due to pain.

We find this evidence from the March 2012 physical therapy visit to be of no value. As we noted above, after this March 2012 physical therapy visit, and prior to the accident, Dr. Bowie physically manipulated Delco's left shoulder and produced no pain. Dr. Blanda opined that this could not reasonably be done with an injury such as the one Delco objectively had post-accident. These testimonies render the leap a fact finder must make to reach a conclusion that Delco's tear existed in March 2012 unreasonable. Moreover, this March 2012 medical record is negated relative to the existence of a rotator cuff tear by Delco's job performance wherein she lifted heavy weights after March 2012 and before the accident.

State Farm asserts that Delco's various credibility issues makes the jury's decision reasonable in finding the left shoulder injury is not related to the accident. This court, in *Guidry v. Lafayette Health Ventures, Inc.*, 15-307 (La.App. 3 Cir. 7/20/16), 203 So.3d 436, addressed a similar argument raised by a defendant attempting to defend a judgment fully denying recovery to a plaintiff. In *Guidry*,

8

203 So.3d at 442, we rejected this notion as the sole basis for full rejection of a claimed injury stating:

> It may very well be true the jury relied entirely on [the plaintiff's] lack of credibility, as suggested by the defense, in rejecting her claims altogether. But "credibility determinations" alone do not preclude a review of the jury's verdict on appeal. We must determine whether the proven facts in evidence provided a reasonable basis for the jury's verdict.

We find the various credibility issues pointed out by State Farm to be inconsequential given the status of the record. Delco had objective medical evidence that the injury existed after the accident. Her treating physician related that injury to the accident. State Farm produced no evidence that renders a finding that this injury likely existed before the accident reasonable. Delco's treating physician was deferred to by every medical expert State Farm presented and that treating physician related that injury to the accident. Thus, there is no evidence in the record to contradict Delco's treating physician on this matter.

Accordingly, after a thorough review of the record, we find no factual basis for the jury's conclusion that the accident did not cause Delco's left rotator cuff injury. As such, the jury was manifestly erroneous and clearly wrong in this regard. Therefore, we reverse this finding by the jury and render judgment that Delco is entitled to compensation damages from State Farm related to the injury of her left rotator cuff.

**ASSIGNMENT OF ERROR NUMBER TWO:**

Delco, in her second assignment of error, argues that the jury erred in failing to award any damages to her related to her injured left rotator cuff, requiring this court to review the record de novo and make an award of special and general damages. Given our findings in Assignment of Error Number One, we find merit to this assignment of error.

> Once it has been determined that the trier of fact is clearly wrong, the appellate court is empowered by [La. Code Civ.P. art. 2164] to render any judgment which is just, legal and proper. Courts of appeal may award damages when the trial court initially rejects plaintiff's demands and where the record contains sufficient proof of damages. In making an initial award of damages at the appellate level, we are not limited to an award of either the lowest or highest amount we would affirm. Instead, we set the award in an amount which is just compensation for the damages revealed by record. *Gordon v. Willis Knighton Med. Ctr.*, 27,044 (La.App. 2 Cir. 6/21/95), 661 So.2d 991, 999, *writs denied*, 95-2776, 666 So.2d 679, 95-2783, (La.1/26/96), 666 So.2d 679.

*Broussard v. Med. Protective Co.*, 06-331, pp. 5-6 (La.App. 3 Cir. 2/21/07), 952 So.2d 813, 818.

In this case, State Farm and Delco agree that past medical expenses related to Delco's left shoulder total $65,000.00. They also agree that past lost wages in the amount of $50,000.00 are related to her shoulder injury. The parties differ in their assessment of an equitable amount to which Delco is entitled for her general damages.

In brief, State Farm states that it would not stray from the amount it provided to the jury in its closing arguments, $10,000.00 for the loss of enjoyment of life and $100,000.00 for Delco's past and future pain and suffering. In brief, Delco provides reported cases that would support a general damages award of $175,000.00 to $225,000.00 or more. Accordingly, this dispute over general damages is the only issue related to quantum for which we must conduct a de novo review.

The record shows that Delco sustained a tear in the rotator cuff of her left shoulder requiring surgery. When she was first seen approximately one month after the accident by Dr. Franklin, the treating physician observed that Delco was visibly injured and aggressively guarded her left shoulder when he examined it. Therefore, he prescribed pain medication which he rarely does. He believed Delco was legitimately and badly in pain.

Dr. Franklin ordered an MRI of the shoulder and referred Delco to Dr. Blanda. Dr. Blanda testified that a torn rotator cuff is painful and described Delco's tear as significant. Accordingly, Dr. Blanda surgically repaired the rotator cuff on February 15, 2017, some seven months after the accident. The surgery was an open procedure and required a four-inch incision. After the surgery, Delco also underwent seven of the twelve recommended physical therapy visits. Despite her attendance, she testified that she was not benefitting from those visits, and, eventually, developed a frozen shoulder. Delco's frozen shoulder, a known risk factor of this surgery, required a manipulation of the shoulder under anesthesia some months later.

Therefore, after a thorough review of the record, based upon our independent assessment of Delco's injuries and general damages, we find that $150,000.00 is an appropriate award for her past and future pain and suffering. Further, we find that Delco is entitled to $15,000.00 for loss of enjoyment of life.

State Farm argues Delco's failure to mitigate her damages should result in a reduction in general damages awarded to her. According to State Farm, Delco's failure to attend physical therapy increased the pain she endured in intensity and temporally.

"The failure to mitigate damages is an affirmative defense, and the burden of proof is on the party asserting the defense." *MB Industries, LLC v. CNA Ins. Co.*, 11-303, p. 10 (La. 10/25/11), 74 So.3d 1173, 1181. Further, the burden of proving what extent the injured party should have mitigated damages is also on the party asserting the affirmative defense. *Guillot v. Doe*, 03-1754 (La.App. 3 Cir. 6/30/04), 879 So.2d 374. Here, that party is State Farm.

Regarding failure to attend physical therapy, when questioned about Delco's failure to attend physical therapy prior to the surgery, Dr. Blanda testified that Delco was going to need the surgical repair to her rotator cuff "one way or the other."

11

Therefore, we find that State Farm failed to prove Delco's medical bills and damages related to her having to undergo the surgery should be mitigated.

Dr. Blanda also testified that Delco failed to attend physical therapy post-surgery. The purpose of the post-surgery therapy is to ward off post-surgical complications, like frozen shoulder, and to increase the range of motion and strengthen the joint. Here, Delco had to undergo manipulation of her frozen shoulder under anesthesia. This is precisely what her attendance at physical therapy was intended to prevent. However, Delco did attend seven of the twelve physical therapy visits recommended by Dr. Blanda prior to having to undergo the manipulation for a frozen shoulder. Dr. Blanda, when asked if Delco could have had the frozen shoulder even if she attended all twelve physical therapy visits, stated "possibly." Thereafter, the following exchange took place:

> Q    Okay. So, her having seven visits or twelve visits, it still could've developed into adhesive capsulitis, right?
>
> A.    Yeah. A lot of people that have shoulder repairs get frozen shoulders. That's part of the risk factors.
>
> Q.    So, she - - I mean, do you put any blame on her for not doing that?
>
> A.    Well, she went seven times and it didn't help; I probably wouldn't, no. I think it was likely going to develop one way or the other.

This testimony indicates that Dr. Blanda opines that Delco would have had the frozen shoulder even if she had attended all twelve of his recommended physical therapy visits. Therefore, we find that State Farm failed to carry its burden to prove that Delco's medical bills and damages related to her shoulder injury should be mitigated due to her failure to attend physical therapy post-surgery.

While both parties agree that Delco's past loss wage claim is reasonably compensated by $50,000.00, State Farm points out that Delco failed to mitigate her

damages for lost wages when she failed to return to work despite having the ability to do so. According to State Farm, the record shows that Delco could have found a job and earned some income while performing light duty or sedentary work.

State Farm supports its argument with the testimony of two vocational rehabilitation experts stating that Delco had the ability to perform light duty and sedentary work. It also supports its argument from the testimony of Delco and Dr. Blanda.

Delco testified that she never asked Dr. Blanda if she could have returned to light duty or sedentary work. Dr. Blanda testified that he placed Delco on no work status and that he would have been ok with Delco "trying light duty work." Dr. Blanda also testified that Delco probably would have been capable of sedentary work.

Therefore, it is clear from the record that Delco may have been able to perform light duty work, could have tried to do so, and could have performed sedentary work. However, our inquiry does not end at this juncture.

Dr. Blanda testified that he never released Delco back to work from initially taking her off work because he was anticipating Delco would have neck surgery. Further, according to Dr. Blanda, the fact that he took her off work was all Delco knew or could have known related to her potentially returning to work. As such, we find the record equally clear that Delco had no knowledge regarding her work status except that Dr. Blanda took her off work and he never told her to go back to work due to both he and she anticipating her having to undergo neck surgery within the year.

While the record is clear that Delco could have asked to return to work and would have been granted that request had she asked, State Farm has the burden to prove that Delco failed to mitigate her damages, not a burden to prove that Delco

failed *to ask whether she could try* to mitigate her damages. State Farm fails to point out any evidence in the record that Delco was offered and refused employment to mitigate her lost wage damages. Further, State Farm points to no evidence that Delco knew or should have known she could return to work. Given these failures to highlight such evidence, we find that State Farm failed to carry its burden to prove that Delco failed to mitigate her lost wage damages.

Above, we found that $150,000.00 is an appropriate award for her past and future pain and suffering $15,000.00 is appropriate for Delco's loss of enjoyment of life. These amounts, when added to the $65,000.00 in medical bills and $50,000.00 in lost wages suffered by Delco, bring her total damages to $280,000.00. As such, we render judgment in favor of Delco against State Farm in these amounts with no reduction for Delco failing to mitigate her damages.

## ASSIGNMENT OF ERROR NUMBER THREE:

Finally, Delco's third assignment of error is that the trial court erred in awarding costs at the trial level to State Farm. We agree.

> Louisiana Code of Civil Procedure article 1920 provides for the taxing of costs after trial. While it is the general rule to tax the party cast in judgment, the article affords the trial court discretion in the matter, providing in pertinent part: "[e]xcept as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." Louisiana Code of Civil Procedure article 1920 has been consistently interpreted to grant the trier of fact great discretion in apportioning costs as it deems equitable under the circumstances.

*Phillips v. G & H Seed Co.*, 10-1484, pp. 6-7 (La.App 3 Cir. 6/8/11), 68 So.3d 645, 651.

Here, State Farm stipulated to liability. Moreover, it agreed to reasonable quantum for most of Delco's injuries should the jury relate those injuries to the July 5, 2016 accident. After a three-day trial, the jury found for State Farm due to Delco's failure to prove any of her injuries were related to the accident.

14

Thereafter, the trial court taxed all costs to Delco. There is no indication in the record that the trial court deviated from the general rule to tax costs onto the party that lost. As such, it simply awarded costs to State Farm because it successfully defended the matter.

On appeal, we find the jury's verdict manifestly erroneous regarding State Farm's fully successful defense of Delco's claim. Following the general rule, as the trial court did, would result in taxing State Farm with the costs of the trial. Therefore, to remain aligned with the underlying judgment of trial court, we reverse the trial court's award of costs to State Farm and render that State Farm is to pay all costs incurred by both parties at the trial level.

**CONCLUSION:**

Shantel Delco raises three assignments of error. The first is that the jury was manifestly erroneous and clearly wrong in finding the auto accident at issue did not cause her left shoulder injury and resulting surgery. The second is that the jury erred in failing to award any damages to Shantel Delco for her left shoulder injury and resulting surgery which requires this Court to review the record de novo and make an award of special and general damages. Finally, Shantel Delco asserts that the trial court erred in awarding costs to State Farm Mutual Automotive Insurance Company.

We find merit in each of these assignments. As such we reverse the jury's verdict and trial court's judgment.

After conducting a de novo review of the record, we render a judgment in favor of Shantel Delco against State Farm Mutual Automotive Insurance Company in the amount of $150,000.00 for past and future pain and suffering, $15,000.00 for loss of enjoyment of life, $65,000.00 in past medical bills, and $50,000.00 in past lost wages. Further, we find that State Farm Mutual Automotive Insurance

15

Company failed to prove that Shantel Delco failed to mitigate her general damages or her damages for past lost wages.  Finally, we reverse the trial court's award of costs to State Farm Mutual Automotive Insurance Company and render that Shantel Delco's trial costs be paid by State Farm Mutual Automotive Insurance Company. All costs of this appeal are to be paid by State Farm Mutual Automotive Insurance Company.

**REVERSED AND RENDERED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-592

SHANTEL DELCO

VERSUS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL.

**PERRY, Judge, dissenting.**

I respectfully dissent from the majority opinion reversing the jury's verdict. I believe there is sufficient support in the record for the jury's rejection of Delco's claim the subject accident injured her left shoulder.

The issue is whether the jury committed manifest or clear error in determining Delco did not prove by a preponderance of the evidence that the subject accident injured her left shoulder. The jury considered medical records which contradicted Delco's testimony as well as evidence Delco did not provide accurate historical information to her doctors. The verdict signifies the jury found Delco lacked credibility; consequently, the jury found the opinions of her doctors, which were based on the medical history given to them by Delco and her claim that her left shoulder pain began after the accident, were equally incredible.

This court was faced with similar credibility issues regarding the impact of an inaccurate medical history and its effect upon medical causation in *Dore v. Mitsui Sumitomo Ins., USA, Inc.*, 12-875 (La.App. 3 Cir. 5/22/13), 117 So.3d 231, *writ denied*, 13-1953 (La. 11/8/13), 125 So.3d 1094. As in this case, in *Dore*, all of the plaintiff's medical expert testimony on causation was premised on the credibility of the plaintiff and her truthfulness in reporting her medical history to her doctors. This court affirmed the jury's verdict in favor of the defendants, ruling that where the

evidence and testimony led to credibility issues, it was for the jury to decide those credibility questions:

> Despite counsel for Dore's protestations to the contrary, *just because evidence of medical treatment was presented, it does not necessarily follow that the jury is required to conclude that the medical treatment was caused by the accident. Credibility calls are for the jury to decide.* Based upon the evidence and testimony in the record, a jury could reasonably conclude that Dore did not give accurate medical histories to her physicians and that she lacked credibility.

> The conflicting evidence given by the parties and their experts in this case supports the conclusion that there are two permissible views of the evidence. The jury's findings are reasonable based upon the evidence, and the jury's verdict was not clearly wrong or manifestly erroneous.

*Id*. at 237 (citations omitted) (emphasis added).

From my review of the record, I find Delco's prior complaints of left shoulder pain, coupled with her inaccurate histories to her doctors, provided the jury with a reasonable basis for its conclusion that Delco's left shoulder was not injured in the subject accident. For these reasons, I do not find the jury committed manifest error and I dissent from the majority opinion reversing the verdict herein.