# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 08-934


**PATRICK E. PHILLIPS, JR., ET AL**

**VERSUS**

**G & H SEED CO., ET AL.**


********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 00-C-2220-D
HONORABLE DONALD WAYNE HEBERT, DISTRICT JUDGE

********

## ELIZABETH A. PICKETT
## JUDGE

********

Court composed of John D. Saunders, Oswald A. Decuir, Michael G. Sullivan, Elizabeth A. Pickett, and Billy H. Ezell, Judges.

**REVERSED AND RENDERED.**

**Saunders, J., dissents and assigns written reasons.**

**Jerold Edward Knoll**
**Triston Kane Knoll**
**The Knoll Law Firm**
**P. O. Box 426**
**Marksville, La 71351**
**(318) 253-6200**
**Counsel for Intervenor-Appellee:**
 **Georgia V. Bernard**
 **James E. Bernard, Jr.**

Gary A. Bezet
Robert E. Dille
Carol L. Galloway
Allison N. Benoit
Terence McCay
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman. L.L.P.
P. O. Box 3513
Baton Rouge, LA 70821-3513
(225) 387-0999
Counsel for Defendant-Appellant:
  Bayer CropScience, L.P.
  Michael G. Redlich

Gerald Charles deLaunay
Attorney at Law
P. O. Box 53597
Lafayette, LA 70505
(337) 237-8500
Counsel for Defendant-Appellee:
  Seafood International, Inc.

Elwood C. Stevens, Jr.
Attorney at Law
P. O. Box 2626
Morgan City, LA 70381
(504) 384-8611
Counsel for Plaintiff-Appellee:
  Patrick E. Phillips, Jr.

Louis Charles LaCour, Jr.
Raymond P. Ward
Christine S. Fortunato
Lauren J. Delery
Adams & Reese, LLP
4500 One Shell Square
New Orleans, LA 70139
(504) 581-3234
Counsel for Defendant-Appellant:
  Michael G. Redlich
  Bayer CropScience, L.P.

Andre F. Toce
Joseph Arshawsky
The Toce Firm, APLC
P. O. Box 2716
Lafayette, LA 70502-2716
(337) 233-6818
Counsel for Plaintiff-Appellee:
  Patrick E. Phillips, Jr., et al

Carl M. Duhon
Attorney at Law
P. O. Box 52566
Lafayette, LA 70505
(337) 237-9868
Counsel for Plaintiff-Appellee:
  Patrick E. Phillips, Jr.

**PICKETT, Judge.**

The defendants-appellants, Bayer CropScience LP (Bayer) and Michael Redlich appeal a judgment of the trial court following a jury trial which found them liable to the plaintiffs for causing harm to the crawfish industry and awarded a money judgment. The plaintiffs, Patrick Phillips, Jr., Lisa Guidry, and James Bernard, have answered the appeal, alleging error on the part of the trial court in allowing the jury to consider the defense of *force majeure*.

## STATEMENT OF THE CASE

Beginning in 1999, the farmers used a product called ICON to coat the rice seed to prevent rice weevils from destroying the rice crop. The ICON killed and/or sterilized the crawfish, both wild and pond-raised, and the crawfish crop suffered. The farmers settled their case with the various defendants. The more than seventy plaintiffs in this case are "buyers/processors" who had output contracts with crawfish-rice farmers to buy their crawfish. They filed suit under the Louisiana Products Liability Act against the manufacturer of the ICON, Bayer CropScience, L.P. (Bayer), various sellers, and the salesman for Bayer, Michael Redlich. When the plaintiffs were unable to certify a class, the matter proceeded to trial with three bellwether plaintiffs representing the rest of the plaintiffs, Patrick E. Phillips, Jr., James Bernard, and Lisa Guidry.

Mr. Phillips had agreements with farmers who used ICON to buy their crawfish crop from them. He also sold seed crawfish to farmers on credit. Mr. Phillips also bought crawfish from other suppliers who bought crawfish from farmers. Mr. Bernard had a verbal agreement to buy all of the output from one farmer's fields. When this farmer's crop was killed by ICON, Mr. Bernard also had other suppliers

1

who purchased crawfish from other farmers who used ICON. While Mrs. Guidry had contracts to buy crawfish from several farmers, including her son and husband, the evidence did not show that all of her suppliers used ICON. Mrs. Guidry also sold seed crawfish to farmers.

The trial in this matter began July 2, 2007. At the close of evidence, the trial court granted a directed verdict in favor of the plaintiffs on the issue of duty and scope-of-duty. The jury then found in favor of the plaintiffs. They assigned 94% of the fault to Bayer, 1% to Mr. Redlich, and 5% to the drought in southwest Louisiana. The jury awarded $900,000.00 in damages to Mr. Phillips, $750,000.00 to Mr. Bernard, and $100,000.00 to Mrs. Guidry. The trial court signed a judgment conforming with the jury's verdict on August 23, 2007. Bayer now appeals that judgment, and the plaintiffs have answered the appeal.

## ASSIGNMENTS OF ERROR

The defendants assert three assignments of error:

1. The trial court erred in finding that the scope of defendant's duty to avoid damaging crawfish extended to these plaintiffs, who neither had a proprietary interest in the crawfish nor proved any other fact bringing themselves within the scope of defendants' duty.

2. The jury committed manifest error in finding that Michael Redlich was a manufacturer of ICON under the Louisiana Products Liability Act.

3. Because no plaintiff in this case received or relied on information from Redlich, imposition of liability on Redlich for negligent misrepresentation was clear error.

Answering the appeal, the plaintiffs allege two errors:

1. The trial court erred in permitting defendants to present a "drought" defense as a *force majeure,* when the drought was not the kind of sudden, calamitous event required under Louisiana law, and where the jury found that drought was responsible for only 5% of plaintiffs' damages.

2

2.      The trial court erred by including "Drought" among the other named defendants on the special verdict form, resulting in a finding of 94% for Bayer, 1% for Bayer's employee Redlich, and 5% for Drought. Since Bayer is liable under respondeat superior for Redlich's conduct, this Court should reallocate the 5% assigned to drought to defendant Bayer.

## DISCUSSION

We will first address the defendants' first assignment of error. They assert that the plaintiffs' economic damages as buyers and processors of crawfish were not within the scope of the duty that Bayer or Mr. Redlich owed to the crawfish farmers whose crawfish crops were destroyed when they used ICON. The supreme court explained the duty-risk method of determining liability in *Duncan v. Kansas City Southern Railway*, 00-66, p. 4 (La. 10/30/00), 773 So.2d 670, 675-76:

> In order to determine whether liability exists under the facts of a particular case, our Court has adopted a duty-risk analysis. Under this analysis, plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached. *Syrie v. Schilhab*, 96-1027, p. 4-5 (La.5/20/97); 693 So.2d 1173, 1176-77; *Berry v. State, Through Dept. of Health and Human Resources*, 93-2748, p. 4 (La.5/23/94); 637 So.2d 412, 414; *Mundy v. Dept. of Health and Human Res.*, 620 So.2d 811, 813 (La.1993). Under the duty-risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. *Mathieu v. Imperial Toy Corp., 94-0952*, p. 4 (La.11/30/94); 646 So.2d 318, 322.

The defendants concede that they had a duty not to damage the crawfish crops of the rice-crawfish farmers. The record in this case makes clear that Bayer has settled with the farmers whose crawfish stocks were destroyed because they used ICON. The question before this court is whether this duty extends to buyers and processors of crawfish. The trial court found that the economic damages to the entire crawfish industry in general and these plaintiffs in particular was foreseeable

3

consequence of the damage to the crawfish crop caused by Bayer's negligence in light of the "ease of association" of the farmers and buyers and processors.

The supreme court discussed the issue of recovery of economic damages in a supply chain system in *PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058 (La.1984). In *PPG Industries*, a dredging contractor damaged Texaco's gas pipeline, and PPG sued the contractor alleging it had to obtain gas from another source at a higher price when Texaco could not fulfill its contract with PPG. In discussing whether PPG had a cause of action against the contractor, the supreme court stated:

> We conclude that while the situation giving rise to the question in this case falls literally within the expansive terms of La.C.C.Art. 2315, in that the dredging contractor's "act ... cause[d] damage to another", the customer cannot recover his indirect economic loss. For the policy reasons hereinafter stated in a duty-risk analysis, we hold that the damages to the economic interest of the contract purchaser of natural gas, caused by a dredging contractor's negligent injury to property which prevents the pipeline owner's performance of the contract to supply natural gas to the purchaser, do not fall within the scope of the protection intended by the law's imposition of a duty on dredging contractors not to damage pipelines negligently.
>
> . . . .
>
> However, the rule of law which prohibits negligent damage to property does not necessarily require that a party who negligently causes injury to property must be held legally responsible to all persons for all damages flowing in a "but for" sequence from the negligent conduct.
>
> Rules of conduct are designed to protect some persons under some circumstances against some risks. Malone, Ruminations on Cause-in-Fact, 9 Stan.L.Rev. 60 (1956). Policy considerations determine the reach of the rule, and there must be an ease of association between the rule of conduct, the risk of injury, and the loss sought to be recovered. *Hill v. Lundin & Assoc., Inc.*, 260 La. 542, 256 So.2d 620 (1972). A judge, when determining whether the interest of the party seeking recovery of damages is one that falls within the intended protection of the rule of law whose violation gave rise to the damages, should consider the particular case in the terms of the moral, social and economic values involved, as well as with a view toward the ideal of justice. See *Entrevia v. Hood*, 427 So.2d 1146 (La.1983).

4

There is clearly an ease of association in the present case between the rule of law which imposes a duty not to negligently damage property belonging to another and the risk of injury sustained by Texaco because of the damage to its property. As noted, however, a rule of law is seldom intended to protect every person against every risk. It is much more difficult to associate the same rule of law, in terms of the moral, social and economic values involved, with the risk of injury and the economic loss sustained by the person whose only interest in the pipeline damaged by the tortfeasor's negligence arose from a contract to purchase gas from the pipeline owner. It is highly unlikely that the moral, social and economic considerations underlying the imposition of a duty not to negligently injure property encompass the risk that a third party who has contracted with the owner of the injured property will thereby suffer an economic loss.

Moreover, imposition of responsibility on the tortfeasor for such damages could create liability "in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares Corp. v. Touche*, 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931). If any of PPG's employees were laid off while PPG sought to obtain another source of fuel for its plant, they arguably sustained damages which in all likelihood would not have occurred but for defendant's negligence. If any of PPG's customers had contracted to purchase products that PPG could not produce and deliver because of the accident, perhaps they sustained damages which in all likelihood would not have occurred but for defendant's negligence. Because the list of possible victims and the extent of economic damages might be expanded indefinitely, the court necessarily makes a policy decision on the limitation of recovery of damages. *See* James, Limitations on Liability for Economic Loss Caused by Negligence; A Pragmatic Approach, 25 Vand.L.Rev. 43 (1972).

We conclude that the duty allegedly violated in the present case did not encompass the particular risk of injury sustained by PPG and did not intend protection from the particular loss for which recovery is sought in PPG's petition.

*PPG Industries*, 447 So.2d at 1059-62 (footnotes omitted).

The trial court denied an exception of no cause of action based on the principles involved in *PPG Industries*, and this court denied an application for supervisory writs filed by Bayer. *Phillips v. G & H Seed Co.*, an unpublished writ disposition bearing docket number 04-1239. The plaintiffs argue that this court's decision to deny writs is law of the case, and should not be revisited. We disagree.

5

The "law of the case" doctrine applies to prior rulings of the appellate court and/or supreme court in the same case. It applies to parties who were involved in the litigation at the time of the prior ruling and had their day in court. The doctrine provides that "an appellate court ordinarily will not reconsider its own rulings of law in the same case." *Sharkey v. Sterling Drug, Inc.*, 600 So.2d 701, 705 (La.App. 1 Cir.), writs denied, 605 So.2d 1099, 1100 (La.1992). The purposes of the doctrine are to avoid litigating the same issue again, promote consistency of result within the case, promote essential fairness to the parties, and judicial efficiency. *Cree Oil Co. v. Home Ins. Co.*, 94-1219 (La.App. 3 Cir. 3/8/95); 653 So.2d 620, *writ denied*, 95-1554 (La.9/29/95); 660 So.2d 875. The "law of the case" is discretionary, being inapplicable to cases in which the prior decision was palpably erroneous or its application would result in manifest injustice. *Willett v. Premier Bank*, 97-187 (La.App. 3 Cir. 6/4/97); 696 So.2d 196.

*Griggs v. Riverland Medical Center*, 98-256 (La.App. 3 Cir. 10/14/98), 722 So.2d 15, 19, *writ denied*, 99-385 (La.5/28/99), 735 So.2d 622.

In examining the peremptory exception of no cause of action, the trial court must accept the allegations of the plaintiffs' petition as true. In reviewing the same issues on appeal after a trial, we are required to review the record and determine if the facts pled in the petition were proven by the plaintiff at trial. Thus, even though the plaintiffs may have successfully stated a cause of action in their petition, it does not necessarily follow that they were able to prove all of the necessary facts in order to prove entitlement to the damages they seek.

The plaintiffs rely on the testimony of an economist, Dr. Russell Lamb, who explained that the farmers, buyers, and processors are all links in a supply chain, and that the industry is not viable without each of the links in the chain. He stated that each group is dependent on the others. However, nothing in the Dr. Lamb's testimony established a proprietary interest in the crawfish on the part of the buyers and processors. This is true even of those buyers who sold seed crawfish to farmers. Once sold, the seed crawfish became the property of the farmers. When the crawfish

6

introduced into the ponds which had been treated with ICON became sterile or died, the owners of those crawfish, i.e., the farmers, bore the burden of the loss, not the buyers or processors.

This court addressed a similar issue in *Louisiana Crawfish Producers Association – West v. Amerada Hess Corp.*, 05-1156 (La.App. 3 Cir. 7/12/06), *writ denied*, 06-2301 (La. 12/8/06), 943 So.2d 1094. We found that crawfish fishermen could not state a cause of action against oil and gas exploration companies and others whom the crawfish fishermen alleged impeded the natural flow in Buffalo Cove and destroyed or diminished the crawfish stocks. This court held that the plaintiffs had no proprietary interest in either the crawfish or the land, and therefore could not recover.

Similarly, we find that the plaintiffs in this case have failed to prove a proprietary interest in the crawfish crop destroyed by the use of ICON. Therefore, the plaintiff's cause must fail. We reverse the judgment of the trial court against Bayer and Mr. Redlich awarding damages to the plaintiffs. Our determination on this issue renders the remaining assignments of error moot. Costs of this appeal are assessed to the plaintiffs, Mr. Phillips, Mr. Bernard, and Mrs. Guidry.

**REVERSED AND RENDERED.**

7

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

PATRICK E. PHILLIPS, JR.

V.

G&H SEED COMPANY, INC.

**Saunders, J., dissents and assigns written reasons.**

I do not feel that our supreme court's decision in *PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058 (La.1984) absolutely and unequivocally requires that a plaintiff have a proprietary interest in the thing damaged in order to recover for damages done to that thing, thus eliminating the possibility that a party privy to a contract recover for damages done to the thing for which the contract was confected. As such, I disagree with the following language in the majority opinion: "the plaintiff failed to prove a proprietary interest in the crawfish crop destroyed by the use of ICON. Therefore, the plaintiff's case *must* fail." (Emphasis added.)

To me, the *PPG Industries, Inc.* case actually stands for the opposite premise expressed by the proposed majority opinion. The following language from *PPG Industries, Inc.* leads me to this conclusion: "[i]t is *highly unlikely* that the moral, social and economic considerations underlying the imposition of a duty not to *negligently* injure property encompass the risk that a third party who has contracted with the owner of the injured property will thereby suffer an economic loss." *PPG Indus., Inc.*, 447 So.2d at 1061 (emphasis added). First, I find it instructive that our supreme court used "highly unlikely" rather than never. "Highly unlikely" simply does not equal "must fail." In fact, it is clear to me that "highly unlikely" can

comfortably coexist with "possible." Our supreme court, only five years after the *PPG Industries, Inc.* case was rendered, in *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La.1989), stated, that the *PPG Industries, Inc.* case does not stand for the absolute bar that the majority opinion proposes. In *9 to 5 Fashions, Inc.*, our supreme court said that the *PPG* case "abrogat[ed] the rule that *flatly prohibited* recovery for intangible economic loss produced by negligent conduct." *Id*. at 234 (emphasis added).

Second, I also find it relevant that our supreme court used the word "negligently" rather than simply omitting any reference to the level of negligence displayed by the tortfeasor. In the present case, I think that the only conclusion a reasonable juror could reach was that Bayer had reckless disregard for the potential ramifications to this state's crawfish industry, as a whole, when crawfish farmers used ICON. To me, the trial court based its directed verdict on this conclusion. This callousness is evidenced by following testimony of Michael Glenn Redlich:

> Q: If you were writing the labels, you would have put something on there that would have warned the users of ICON that it would have killed crawfish. Isn't that correct?
> A: Sir, I didn't - - no, because I did not know this when we introduced the product, sir.
>
> Q: you had concerns about it, you have reservations about it, you made multiple inquiries about it, you were disappointed when your employer did not do what you were requesting? Isn't that true.
> A: Yes, sir.

In my view, we should affirm the directed verdict granted by the trial court and affirm the awards given by the jury. Failing this, we should reverse the directed verdict granted by the trial court and remand the case to the jury. There, the jury can look at the particular facts of this case and make a determination of whether "the

moral, social and economic values involved[,] . . .with a view toward the ideal of justice[,]" dictate that "the interest of the party seeking recovery of damages is one that falls within the intended protection of the rule of law whose violation gave rise to the damages." *PPG Indus., Inc.*, 477 So.2d at 1061.

Further, under the reasoning of the majority, a tortfeasor may intentionally damage property necessary for a party to fulfill an obligation under a contract, yet only be responsible to that property's owner for the actual damage done to the property. This is in direct contradiction to our Supreme Court's findings in *9 to 5 Fashions, Inc.,* 538 So.2d 228.

Finally, even if one interprets the *PPG Industries, Inc.* case as the majority opinion does, I believe the *PPG Industries, Inc.* case is distinguishable from the case before us. In the *PPG Industries, Inc.* case, the plaintiff had an alternate source of the natural gas it needed to operate its manufacturing plant. Here, the buyer/processors had no other source for the crawfish they contracted to receive from the crawfish farmers. The two groups formed a symbiotic relationship whereas, in *PPG Industries, Inc.*, the plant simply found another source for its natural gas. Accordingly, I respectfully dissent.