## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1405

**PATRICK E. PHILLIPS, JR., ET AL.**

**VERSUS**

**G & H SEED CO., ET AL.**

**********

ON REMAND FROM THE LOUISIANA SUPREME COURT
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, DOCKET NO. 00-C-2220-D
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE

**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, John D. Saunders, Oswald A. Decuir, Jimmie C. Peters, Marc T. Amy, Elizabeth A. Pickett, Billy H. Ezell, J. David Painter, Shannon J. Gremillion and Phyllis M. Keaty, Judges.

**REVERSED AND REMANDED**.

**THIBODEAUX, Chief Judge, concurs and assigns additional reasons.**

**PAINTER, J., concurs and assigns written reasons.**

**DECUIR, J., dissents and assigns written reasons.**

**PICKETT, J., dissents and assigns written reasons.**

**EZELL, J., dissents for the reasons assigned by Decuir, J. and Pickett, J.**

**GREMILLION, J., dissents for the reasons assigned by Decuir, J. and Pickett, J.**

**GENOVESE, J., recused.**

Elwood C. Stevens, Jr.
Domengeaux Wright Roy & Edwards, LLC
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, LA 70502-3668
(337) 233-3033
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Patrick E. Phillips, et al.

Jerald Edward Knoll, Sr.
The Knoll Law Firm, LLC
P.O. Box 426
Marksville, LA 71351-0426
(318) 253-6200
COUNSEL FOR PLAINTIFFS/APPELLANTS:
        Patrick E. Phillips, et al.

Andre' F. Toce
The Toce Firm, A.P.L.C.
969 Coolidge Blvd.
Lafayette, LA 70503
(337) 233-6818
COUNSEL FOR PLAINTIFFS/APPELLANTS:
        Patrick E. Phillips, et al.

Gary A. Bezet
Robert E. Dille
Carol L. Galloway
Allison N. Benoit
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
II City Plaza
400 Convention Street, Suite 700
P.O. Box 3513
Baton Rouge, LA 70821
(225) 387-0999
COUNSEL FOR DEFENDANTS/APPELLEES:
        Bayer CropScience LP, Michael Redlich, G&H Seed Company, Inc.,
        Crowley Grain Drier, Inc., Nolan J. Guillot, Inc., and Mamou Rice Drier
        and Warehouse, Inc.

Terrence D. McCay
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One Lakeshore Drive, Suite 1150
Lake Charles, LA 70629
(337) 430-0350
COUNSEL FOR DEFENDANTS/APPELLEES:
        Bayer CropScience LP, Michael Redlich, G&H Seed Company, Inc.,
        Crowley Grain Drier, Inc., Nolan J. Guillot, Inc., and Mamou Rice Drier
        and Warehouse, Inc.

Raymond P. Ward
Adams and Reese, L.L.P.
701 Poydras Street, Suite 4500
New Orleans, LA 70139
(504) 581-3234
COUNSEL FOR DEFENDANTS/APPELLEES:
        Bayer CropScience LP and Michael Redlich

Michael T. Pulaski
McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, PC
195 Greenbriar Blvd., Suite 200
Covington, LA 70433
(337) 831-0946
COUNSEL FOR DEFENDANTS/APPELLEES:
        Allianz Global Risks and US Insurance Company

**COOKS, Judge.**

## ON REMAND

Plaintiffs, who consist of several dozen buyers and/or processors of crawfish, appeal the trial court's granting of the defendants' motions for summary judgment, which dismissed the remaining claims of the buyer/processor plaintiffs. In *Phillips v. G & H Seed Co.*, 10-1405 (La.App. 3 Cir. 5/11/11), 66 So.3d 507 (hereafter referred to as *Phillips II* ), a panel of this Court reversed the summary judgment grants, and remanded the matter back to the trial court for trial on the merits. The panel in *Phillips II* reversed on the grounds that the trial court based its granting of the summary judgments solely on this Court's prior opinion in *Phillips v. G & H Seed Co.*, 08-934 (La.App. 3 Cir. 4/8/09), 10 So.3d 339, *writ denied*, 09-1504 (La.10/30/09), 21 So.3d 284 (hereafter referred to as *Phillips I*). In *Phillips I*, a panel of this Court held the plaintiffs in that case (who were three specifically selected buyers and/or processors of crawfish) "failed to prove a proprietary interest in the crawfish crop destroyed by the use of ICON.... [and as such] the plaintiffs' cause must fail." *Phillips I*, 10 So.3d at 344. In *Phillips II*, we held "a per se proprietary interest rule is not the law of Louisiana in a products liability case" and the jurisprudence of this state has consistently mandated "a case specific duty-risk analysis be undertaken to determine the scope and extent of the defendants duties in this case." *Phillips II*, 66 So.2d at 516. Defendants, Bayer CropScience LP, its employee/salesman, Michael Redlich, and several companies who purchased the allegedly defective insecticide from Bayer CropScience, LP, applied for writs to the Louisiana Supreme Court. After considering the writ application, the supreme court "remanded to the Third Circuit Court of Appeal for *en banc* opinion after briefing and argument." *Phillips v. G & H Seed Co.*, 11-1861 (La. 11/18/11), 10 So.3d 339

After *en banc* consideration, a majority of the judges vote to adopt *Phillips II* as the controlling opinion from this Court, which we reissue this date:

Plaintiffs, who consist of several dozen buyers and/or processors of crawfish, appeal the trial court's granting of the defendants' motions for summary judgment, which dismissed the remaining claims of the buyer/processor plaintiffs. For the following reasons, we reverse the summary judgment grants, and remand the matter back to the trial court for trial on the merits.

## FACTS AND PROCEDURAL HISTORY

This protracted and contentious litigation had its genesis in the late 1990's, when Bayer CropScience LP and its employee, Michael G. Redlich, marketed the insecticide ICON in Louisiana. Certain companies purchased ICON, applied it to rice seed, and sold the ICON-coated rice seed to rice farmers in Louisiana. Many of these rice farmers also raised crawfish in their rice ponds.

Essentially, Plaintiffs allege the ICON coated rice seed was introduced into the rice fields/crawfish ponds of South Louisiana in 1999. The active ingredient in ICON was fipronil, which is a chemical used to control arthropods and is used in a variety of compounds to control insects such as termites, fleas, mole crickets and the rice water weevil. According to the plaintiffs, the introduction of ICON killed and/or sterilized the crawfish, both wild and pond-raised. According to the plaintiffs, as a result of the contamination, Louisiana's annual farm-raised crawfish crop dropped from over 60 million pounds to approximately 10 million pounds.

Defendants argued the use of ICON is compatible with crawfish farming, provided the farmer allows for a suitable waiting period between planting the ICON-treated rice seed and introducing crawfish to the rice field. Defendants also argued the record breaking drought in Louisiana during the time in question was the reason for the decline in crawfish production.

In 1999, a class action lawsuit was filed on behalf of all crawfish farmers in Louisiana, *Craig West, et al. v. G & H Seed Co., et al.*, No. 99-C-4984-A in the Twenty-Seventh Judicial District Court, Parish of St. Landry. That lawsuit was eventually settled.

Thereafter a class action suit was initiated on behalf of Patrick Phillips and Atchafalaya Processors, Inc, individually and on behalf of all others similarly situated. This class action suit was brought by crawfish buyers, processors and resellers. Named as Defendants were Bayer CropScience LP and Michael Redlich. Also named as Defendants were the companies who purchased the ICON, applied it to the rice seed, and sold it to the farmers: G & H Seed Co., Inc., Crowley Grain Drier, Inc., Delhi Seed Co., Inc., Terral Seed Co., Inc., Mamou Rice Drier & Warehouse, Inc.

Plaintiffs eventually abandoned their efforts to certify either a plaintiff or defendant class. Thereafter, through a series of supplemental and amending petitions, the matter proceeded as a cumulation of individual actions comprising the claims of approximately 72 individual crawfish buyers, resellers, and processors.

Bayer filed an exception of no cause of action, contending in order to maintain a delictual action against a manufacturer for property damage caused by a defective product, the claimants must have some proprietary interest in the damaged property. Bayer argued that since none of the plaintiffs in this litigation are crawfish farmers, and none of them had any ownership in the damaged crop, they could not demonstrate the required proprietary interest. Plaintiffs argued there were existing joint ventures between the crawfish farmers and buyers/processors during the time the crawfish crop was damaged. The trial court overruled the exception, rejecting the *per se* exclusionary/proprietary interest rule of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed.

3

290 (1927), in favor of the policy driven duty/risk analysis espoused in *PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058 (La.1984). The trial court found in applying a duty-risk analysis, the law extended a remedy to the buyer/processor plaintiffs. Bayer applied for writs to this Court. Writs were denied.

Because of the enormity of trying all 72 actions at once, the trial court determined it would be best to try the actions of four plaintiffs, three to be chosen by the plaintiffs and one chosen by the defense. This number was eventually reduced to three plaintiffs: Patrick Phillips (d/b/a Phillips Seafood), James Bernard (d/b/a J. Bernard Seafood Processors, Inc.), and Lisa Guidry (d/b/a Guidry's Crawfish).

After a full trial on the merits, Plaintiffs filed a Motion for Directed Verdict on whether the Defendants' duty extended to these buyer/processor plaintiffs. Finding there was an "ease of association from farmer to wholesaler" such that farmers and processors are "inextricably interwoven and symbiotic in their relationships," the trial court granted the Motion for Directed Verdict. The jury then returned a verdict in favor of each of the three plaintiffs, assigning 94% fault or causation to Bayer, 1% to Bayer salesman Michael Redlich, and 4% to the drought that occurred in South Louisiana. It awarded $900,000 to plaintiff Phillips, $750,000 in damages to plaintiff Bernard, and $100,000 to plaintiff Guidry.

Defendants timely filed a Motion for Judgment Notwithstanding the Verdict, New Trial, and Remittitur. The motions were denied and Defendants filed an appeal with this Court.

A five judge panel of this Court reversed the trial court's directed verdict on scope of duty and set aside the jury's verdict. *Phillips v. G & H Seed Co.*, 08-934 (La.App. 3 Cir. 4/8/09), 10 So.3d 339 (hereafter referred to as *Phillips I* ). The

4

majority reasoned that since "the plaintiffs in this case failed to prove a proprietary interest in the crawfish crop destroyed by the use of ICON.... the plaintiff's cause must fail." *Id*. at 344. The majority did not undertake a duty-risk analysis or apply the *PPG* factors as done by the trial court. Instead it applied the *per se* exclusionary/proprietary interest rule of *Robins Dry Dock*. Plaintiffs also note the majority did not explain what would be "sufficient" to establish a proprietary interest under Louisiana law.

Judge Saunders dissented from the majority opinion, finding it contradicted the Louisiana Supreme Court's finding in *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La.1989), that "the *PPG* case abrogat[ed] the rule that flatly prohibited recovery for intangible economic loss produced by negligent conduct." Judge Saunders found "the only conclusion a reasonable juror could reach was that Bayer had reckless disregard for the potential ramifications to this state's crawfish industry, as a whole, when crawfish farmers used ICON." *Phillips I*, 10 So.3d at 345. This callousness, Judge Saunders concluded, was sufficient to support the trial court's directed verdict on scope of duty. Further, Judge Saunders noted that even if one interprets *PPG* as the majority does, it was factually distinguishable from the present case. In *PPG*, the plaintiff had an alternative source to get the natural gas it needed, whereas the buyers/processors here had no other source for the crawfish they contracted to receive from the crawfish farmers. This interwoven, symbiotic relationship between crawfish farmers and crawfish buyers/processors was different than that present in *PPG*.

Plaintiffs' Application for Rehearing to this Court was denied. Similarly, the application for a Writ of Review to the Louisiana Supreme Court was denied. *Phillips v. G & H Seed Co.*, 09-1504 (La.10/30/09), 21 So.3d 284. Following these denials, Defendants filed Motions for Summary Judgment against all the remaining

5

buyer/processor plaintiffs based on the proprietary interest requirement espoused by this Court's opinion in *Phillips I*.

At the hearing on the summary judgment motions, Plaintiffs argued the duty-risk analysis set forth in the *PPG* case was controlling in this case. Plaintiffs also contended even if the trial court was compelled to enforce a proprietary interest requirement pursuant to this Court's decision in *Phillips I*, that term had never been defined by our Supreme Court to require ownership to assert a claim for economic damages. Plaintiffs complained they were at a loss to understand exactly what material fact(s) were necessary to establish a level or degree of interest sufficient to allow them to prevail. Nonetheless, in an attempt to meet this burden of proof, Plaintiffs submitted numerous sworn affidavits attesting to the nature and extent of the buyers/processors involvement in the Louisiana crawfish industry.

In oral reasons for judgment, the trial court voiced its disagreement with the opinion in *Phillips I*. However, believing it was constrained by that ruling, the trial court granted the motions for summary judgment and dismissed the remaining claims of the buyer/processor plaintiffs. [1]

---

[1] There was also a corollary federal action in the United States District Court, Western District of Louisiana, *Wiltz, et al. v. Bayer CropScience, et al.*, Docket No. 08-2024, which arises from the exact same set of facts as the present case and concerns the same question regarding the scope of the defendants' duty. The *Wiltz* case previously came to this Court as an appeal from the denial of a Motion to Intervene in *Phillips*. The *Wiltz* intervention in *Phillips* was ultimately denied by this Court. See *Phillips v. G & H Seed Co.*, 09-1102 (La.App. 3 Cir. 3/10/10), 32 So.3d 1134, *writ denied*, 10-822 (La. 6/18/10), 38 So.3d 325. The matter was then removed by the defendants to federal court. The defendants then filed a motion for summary judgment on the alleged lack of a proprietary interest in the plaintiffs. Much as the trial court did in the present case, the federal district court judge granted the motion for summary judgment even though he did not believe a bright line litmus test on proprietary interest was the correct law in

6

Plaintiffs have appealed the trial court's granting of the summary judgment, and assert the following assignments of error:

> 1.  It was error to ignore the mandates of *PPG* and its progeny and not employ a duty-risk/ease of association analysis which considers the scope of Defendants' duties in the context of moral, social and economic issues involved and a view toward the ideal of justice.

---

Louisiana. The district judge explained in detail why he felt compelled to grant the summary judgment:

> MR. STEVENS (counsel for Plaintiffs): I would like this Court to rule that the motions for summary judgment by the defendants based strictly on the proprietary interest rule is denied because proprietary interest is not the law of the Louisiana Supreme Court. In a products liability case, which must apply a duty/risk analysis under controlling jurisprudence, it is particularly foreseeable that these folks would be injured, therefore, they are within the scope of the duty of this defendant not to negligently kill the crawfish crop that these folks spent 30 years helping to develop....
>
> THE COURT: Then let me state this for the record. I agree with that statement. However, if I do that, I'm going to get reversed by the Fifth Circuit. I agree with it. I agree with everything you had to say.
>
> I would also recommend to the Fifth Circuit, when you take your appeal, that you ask them to certify this to the Supreme Court and they can get a final ruling on this issue.
>
> I agree with everything you have to say. I agree with all of it. I agree with Judge Hebert.
>
> MR. STEVENS: The question is as a matter of law what is the law of the Louisiana Supreme Court? Is it duty/risk analysis or is it proprietary interest? And--
>
> THE COURT: I think if I rule your way, I'm going to get reversed. I'm inviting you to take it to the Fifth Circuit. My opinion is that you're absolutely correct. I do think they have a proprietary interest.
>
> MR. STEVENS: Well, then--
>
> THE COURT: Listen to me, Mr. Stevens.
>
> MR. STEVENS: I'm sorry.
>
> THE COURT: You know, I'm going to rule against you. What I'm trying to do is give you some information so that when you take it up, you can say, you know. Judge Haik did this because he got slapped on the wrist by the Court pertaining to Taira Lynn. And I think he was wrong in doing that because that was a maritime case and this belongs to Louisiana--this is a Louisiana driven cause of action, not a maritime driven cause of action. Therefore, I think Judge Haik is wrong. Okay?
>
> So do that, Mr. Stevens. Do that

2. It was error to require Plaintiffs to prove a "proprietary interest" in the damages crawfish crops as a prerequisite to recovery in this tort suit asserting claims under the Louisiana Products Liability Act for breach of express warranty, failure to warn and false representations.

3. If a proprietary interest is required (which is disputed), then the trial court erred in applying *Phillips I* so as to require actual "ownership" in order to establish such an interest contrary to Supreme Court jurisprudence which clearly envisions an interest "derived from the owner" (less than ownership but more than a mere guest or member of the general public).

4. The trial court erred in granting summary judgments even against those buyers/processors who presented issues of fact as to an actual "ownership" interest in crawfish ponds from which they would have supplied crawfish top their respective businesses, "but for" Defendants' negligent acts and egregious conduct.

5. The trial court erred in granting summary judgments even against those buyers/processors who demonstrated long standing, symbiotic relationships with the farmers/fishermen and reasonable, recurring and investment-based expectations of an economic interest in the annual crawfish crops which, as a matter of law, made their damages particularly foreseeable and established material issues as to the existence of a sufficient interest to be worthy of legal protection.

6. The trial court committed manifest error by concluding that even the claims of "hybrids" should be summarily dismissed because many of them had "settled" their claims in a companion Class Action settlement in 2004 between these Defendants and the farmer/fishermen group of claimants, even though the final judgment in that matter expressly reserved the right of all settling farmers/fishermen "to pursue their respective claims as buyers and/or processors of crawfish."

Defendants contend that this Court's previous decision in *Phillips I* has already decided the legal issues raised in this appeal, and thus, the "Law of the Case" doctrine applies.

## ANALYSIS

*A. Law of the Case Doctrine.*

We will first address Defendants' argument that this Court's decision in *Phillips I* is law of the case, and should not be revisited. For the following reasons, we do not find the law of the case doctrine applicable here.

8

Generally, the law of the case doctrine applies to prior rulings of the appellate court and an appeals court will not reconsider its own ruling in the same case. *Gentry v. Biddle*, 05-61 (La.App. 3 Cir. 11/2/05), 916 So.2d 347. However, the application of this doctrine is discretionary and an appellate court may reconsider an issue if the prior decision was "palpably erroneous or its application would result in manifest injustice." *Id*. at 352 (quoting *Griggs v. Riverland Med. Ctr.*, 98-256, p. 6 (La.App. 3 Cir. 10/14/98), 722 So.2d 15, 19, *writ denied*, 99-385 (La.5/28/99), 735 So.2d 622).

We note that earlier in the procedural history of this case, Defendants filed an exception of no cause of action asserting, for Plaintiffs to maintain a delictual action, they must first demonstrate some proprietary interest in the damaged property. The trial court overruled the exception, rejecting the *per se* exclusionary/proprietary interest rule of *Robins Dry Dock* in favor of the policy driven duty/risk analysis set forth by the Louisiana Supreme Court in *PPG Industries*. A three member panel of this Court unanimously denied writs, finding no error in the trial court's decision. However, on appeal a five-judge panel (with one dissenting judge) reached an opposite conclusion, finding "the plaintiff's case [sic] must fail" because they "failed to prove a proprietary interest in the crawfish crop." *Phillips I*, 10 So.3d at 344. Finding this Court's previous rulings on this issue are equivocal, we choose not to apply the law of the case doctrine.

*B. Proprietary Interest.*

We initially make the following observations at the outset of our discussion on proprietary interest: (1) the trial court unquestionably based its ruling granting the summary judgments solely on this Court's prior decision in *Phillips I*, 10 So.3d 339; (2) although the opinion in *Phillips I* discussed *PPG* and the duty-risk method, it did not engage in any such duty-risk analysis; instead it resurrected the

9

bright-line litmus test that required a proprietary interest in the damaged property that was abrogated in *PPG*.

The issue in this case boils down to whether Louisiana will apply a bright-line litmus test mandating proprietary interest in damaged property as a prerequisite to recovery, or do Louisiana courts apply a multi-factor, policy-driven, duty-risk analysis when determining the scope and extent of a defendant's duties under the Louisiana Products Liability Act for particularly foreseeable economic damages. Finding our previous opinion in *Phillips I* failed to consider the instruction of the Louisiana Supreme Court's opinion in *PPG*, which directed that a duty-risk analysis should be performed to determine the scope and extent of a particular defendant's duties,[2] we decline to follow it, and instead adhere to the dictates of our state's highest judicial court. We find the course of action taken in *Phillips I*, can, in certain instances, deprive an innocent person of any remedy for damage suffered in direct contrast to our fundamental civil law principal that obliges a person to fully repair damage caused by his fault. La.Civ.Code art. 2315.

Our review of the jurisprudence of this State indicates that the *per se* exclusionary/proprietary interest rule illustrated in *Robins Dry Dock* is not the law of this state. Rather, a duty-risk analysis was adopted by the Louisiana Supreme Court in *PPG*.

In *PPG*, the defendant's dredging operations damaged a gas pipeline owned by Texaco. Texaco had a contract to supply gas to PPG. As a result of the damage to the pipeline, PPG was forced to obtain gas from other sources. PPG sued Bean Dredging, seeking recovery of the additional costs expended to obtain gas.

---

[2] We are cognizant that the Supreme Court denied writs in *Phillips I*. However, even though writs were denied, there was, of course, no discussion by the Supreme Court explaining the reasons for the writ denial. In contrast, we have the Supreme Court opinion in *PPG Industries*, which as Justice Dennis later noted in *9 to 5 Fashions*, 538 So.2d at 234, "abrogat[ed] the rule that flatly prohibited recovery for intangible economic loss produced by negligent conduct." We choose this day to follow the express dictates of *PPG Industries* rather than the implied message of a writ denial in *Phillips I*.

10

Although the supreme court ultimately held PPG's damages did not fall within the scope of the duty not to damage a pipeline owned by Texaco, it did so after undertaking a duty-risk analysis to determine whether that particular risk fell within the scope of the duty. The court stated:

> Policy considerations determine the reach of the rule, and there must be an ease of association between the rule of conduct, the risk of injury, and the loss sought to be recovered. *Hill v. Lundin & Assoc., Inc.*, 260 La. 542, 256 So.2d 620 (1972). A judge, when determining whether the interest of the party seeking recovery of damages is one that falls within the intended protection of the rule of law whose violation gave rise to the damages, should consider the particular case in the terms of the moral, social and economic values involved, as well as with a view toward the ideal of justice. See *Entrevia v. Hood*, 427 So.2d 1146 (La.1983).

*PPG Indus., Inc.*, 447 So.2d at 1061.

The court in *PPG* did caution that a party who negligently causes injury to property will not always be held legally responsible to all persons for all damages flowing in a "but for" sequence, because the list of possible victims might be "expanded indefinitely." Thus, the court must "necessarily make a policy decision on the limitation of recovery of damages." *Id*. at 1061-62.

In his dissent in *PPG*, Justice Calogero "applaud[ed] the majority's applying a duty risk analysis in the consideration of tort recovery . . . and [in] abandoning the *per se* exclusion of such damages which our courts have heretofore adopted on the heels of *Robins* and *Forcum-James* [*Co. v. Duke Transportation Co.*, 231 La. 953, 93 So.2d 228 (1957) ]."[3]

The cases since have consistently followed the duty-risk analysis set forth in *PPG*. In *Cleco Corp. v. Johnson*, 01-175 (La.9/18/01), 795 So.2d 302, a negligent truck operator backed into a utility pole causing a power surge that ultimately caused damages to the property of Cleco's customers. Cleco then paid for the

---

[3] Justice Calogero dissented, not because of the implementation of a duty-risk analysis, but rather because he disagreed with the majority's determination that PPG's economic loss, from added fuel cost, was not a risk encompassed within the duty not to negligently injure Texaco's pipelines.

customers' damages and filed suit to recover those payments. The supreme court examined whether the law afforded Cleco's customers a cause of action. The supreme court utilized the case by case, duty-risk analysis set forth in *PPG*, and found that the law extended a remedy to both Cleco and its customers. In her concurring opinion, Justice Kimball specifically noted "[t]he majority today has chosen to handle these claims on a case by case basis using the duty-risk analysis, which in my view is the preferable approach." *Id*. at 307. Even the dissent in *Cleco* did not question the majority's decision to utilize a duty-risk analysis as set forth in *PPG*, but rather believed the duty allegedly violated in that case did not encompass the particular risk of injury sustained by Cleco and/or its customers.

The court in *Cleco*, cited with approval this Court's decision in *Istre v. Fidelity Fire & Casualty Ins. Co.*, 628 So.2d 1229 (La.App. 3 Cir.1993), *writ denied*, 634 So.2d 852 (La.1994). In *Istre*, a backhoe operator working for a construction company came into contact with electrical lines causing a power outage that knocked out electrical power to a traffic signal four miles away. Approximately one hour later, the plaintiff was involved in an accident due to the traffic light outage. The plaintiff subsequently filed suit against several parties, including the construction company. After utilizing a duty-risk analysis, this Court found the construction company liable, stating:

> The construction company's main argument is that its duty to avoid knocking out electrical power does not extend to the risk that one hour later, a driver at an intersection four miles away, will fail to see that traffic lights are not working and that other drivers were treating the intersection as a four-way stop, out of turn, and hurt another driver who was entering the intersection in obedience to a four-way stop rotation. To this it pleads that the company could not have known that engaging this one power line would create a general outage affecting signal lights four miles away.
>
> We reject this argument. This backhoe operator knew the risk of his backhoe knocking out power. His construction company knew or should have known the risks to people and property caused by power outages, and the predictability of widespread effects and delays in restoring power. The increased risk of an accident caused by this

> defendant's conduct was still present when the accident occurred. This accident to this plaintiff was reasonably foreseeable. This defendant is liable to the plaintiffs for the breach of its duty.

*Id.* at 1232.

As noted by Judge Saunders in his dissent in *Phillips I*, the supreme court in *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La.1989), specifically found that "the *PPG* case abrogat[ed] the rule that flatly prohibited recovery for intangible economic loss produced by negligent conduct."

In *Roberts v. Benoit*, 605 So.2d 1032 (La.1991), the supreme court reiterated that the extent of protection owed a particular plaintiff is determined on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms. The *Roberts* court found that "[r]egardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty." *Id.* at 1044.

We also note the comments of several commentators, that have expressed both the conclusion that *PPG's* utilization of a case by case duty-risk analysis is the law in Louisiana, and that it is the preferable approach. Justice Dennis, in his opinion in *Pitre v. Opelousas General Hospital, et al.*, 530 So.2d 1151, 1155-56, citing Prosser and Keeton, stated:

> The duty risk approach is most helpful, however, in cases where the only issue is in reality whether the defendant stands in any relationship to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit.

Plaintiffs also call this Court's attention to the following language from a leading treatise on tort law in this state:

> Neither a blanket denial nor an unlimited approval of recovery is appropriate. One of the fears is that allowing recovery may subject defendants to liability for an indeterminate amount of damages to a potentially indeterminate class of claimants. Another is that in some cases, allowing recovery will result in double compensation because the plaintiff has already protected himself from the risk of the economic harm through contract, such as insurance, indemnity or the increased price for his goods. Also, in some cases, the economic

> harm the plaintiff suffers is an ordinary risk of the enterprise in which he is participating. However, where none of these factors is justified, recovery should be permitted. Thus a case-by-case analysis appears superior to the > Robins "no duty" rule.

Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law, § 5.09 (1996).

Our review of the jurisprudence establishes that the Louisiana Supreme Court in *PPG*, and the cases that followed, abandoned the *per se* no duty rule espoused in *Robins Dry Dock* and *Forcum-James* in favor of a duty-risk analysis. Rather than "taking a mechanical approach to the unreasoned conclusion that the petition for economic loss caused by negligent interference with contractual relations fails to state a cause of action," the supreme court concluded a more nuanced, case specific, duty-risk analysis was preferable. *PPG*, 447 at 1061. *PPG* clearly shows the supreme court did not intend to close the door to recovery for all claims of economic harm arising out of damage to what is technically a third person's property, i.e., "proprietary interest." It made such recovery available in certain circumstances for limited groups of people with a special interest in or relationship with the damaged property, whose damages were a particularly foreseeable result of the tortious conduct of the defendant. Although the opinion in *Phillips I* discussed *PPG* and its utilization of a duty-risk method of analysis, the court failed to perform any such duty-risk analysis, and instead concluded the "plaintiffs' cause must fail" because they failed to prove a proprietary interest in the damaged property. *Phillips I*, 10 So.3d at 344. This was contrary to the law.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's grant of the summary judgments because a *per se* proprietary interest rule is not the law of Louisiana in a products liability case. Our Louisiana Supreme Court in *PPG Indus. Inc.*, 447 So.2d 1058, mandates a case specific duty-risk analysis be undertaken to determine the scope and extent of the defendants' duties in this case. As the trial court based

its granting of the summary judgments solely on this Court's opinion in *Phillips I*, we now reverse and remand this case back to the trial court for further proceedings consistent with this opinion. As this case is before us on grants of summary judgment, it is not appropriate for this Court to determine or even speculate on the result of the required duty-risk analysis. Our determination on this issue renders Plaintiffs' other assignments of error moot. All costs of this appeal are assessed to Defendant-Appellees.

**REVERSED AND REMANDED.**

THIBODEAUX, Chief Judge, concurring for additional reasons.

I fully agree with the majority opinion. I add this brief comment to provide an additional reason for reversal. While I do not agree that the proprietary interest rule is the law in Louisiana, the plaintiffs did not attempt to prove proprietary interest in *Phillips I*. This case is properly remanded to allow them to prove that standard, if they choose to do so, as an additional supplement to a duty-risk analysis.

15

PATRICK E. PHILLIPS, JR., ET AL.

VERSUS

G & H SEED CO., ET AL.

**THIBODEAUX, Chief Judge, concurring for additional reasons.**

I fully agree with the majority opinion. I add this brief comment to provide an additional reason for reversal. While I do not agree that the proprietary interest rule is the law in Louisiana, the plaintiffs did not attempt to prove proprietary interest in *Phillips I*. This case is properly remanded to allow them to prove that standard, if they choose to do so, as an additional *supplement* to a duty-risk analysis.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

10-1405

PATRICK E. PHILLIPS, JR., ET AL.

VERSUS

G & H SEED CO., ET AL.

DECUIR, J., dissenting.

I dissent for the reasons assigned by Judge Pickett, and for the additional

reasons herein.

This is certainly not a new issue for this court.  In *PPG Industries, Inc. v.*

*Bean Dredging Corp.*  (La.App. 3 Cir. 1982), 419 So.2d 23, 24-25, this court said:

> The issue, as posed by appellee, is whether the law as expressed in *Robin's Dry Dock & Repair Company v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290, 1927, and Louisiana's adoption thereof, *Forcum-James Co. v. Duke Transportation Co.*, 231 La. 953, 93 So.2d 228 (La.1957), should be overruled.
>
> *Robin's Dry Dock, supra*, is on point.  Hence, the question becomes, is it time to re-examine the doctrine announced therein, and if so, which court should examine the wisdom of that decision.
>
> . . . .
>
> Defendant's position, representing the orthodox view, is the general recognition of non-liability for negligent interference in existing contracts or with prospective contractual relations.  The rule relieves an unwary tortfeasor from potentially ruinous liability for indirect economic losses.  As was noted in  *James, Limitations on Liability for Economic Loss Caused by Negligence:  A Pragmatic Appraisal*, 25 Vand.L.Rev. 43 (1972), under the rule, "The insurer of A's life has no action against one who negligently causes A's premature death;  the employer has no action for sums that he has had to pay because defendant has negligently injured his employee;  a ship's time charterer has no action for loss of the ship's use while it is laid up for repairs necessitated by defendant's negligence;  and a

workman has no action for loss of wages during a layoff resulting from damage negligently caused to his employer's plant."

In each of the aforementioned examples of the doctrine's application the loss is indirect and economic. Furthermore, serious problems face insurers in handling insurance against potentially wide, open-ended liability. On the other hand, plaintiff could have contracted for Texaco to indemnify appellant for economic loss occasioned by third party negligence, but apparently failed to do so. The rule provides a simple, clear and predictable rule for the commercial world to follow, make its plans and insure accordingly.

Appellant's position, although representing the minority view in this country, is equally persuasive. PPG has undisputably suffered damage, through no fault of their own, as a result of defendants' negligence and they submit that the rule of Robin's Dry Dock is extremely archaic, arbitrary, and unfair and should not be maintained in our modern society. In support thereof, PPG contends that difficulty in proof of causation in damages and the possibility of fraudulent claims is not a valid reason to refuse recognition of an otherwise valid cause of action, nor is limiting defendants' commercial liability of itself valid grounds for denying plaintiff its day in court. Instead, liability should be a function of foreseeability and nature of loss. Such a rule would lessen the burden of placing such losses upon innocent plaintiffs and shift the responsibility to insure to the negligent defendant. *Comment,* 88 Harv.L.Rev. 444 (1974).

Preliminarily we address the question of whether the *Robin's Dry Dock* doctrine has acquired the status of jurisprudence constante. We believe it has. Our research has revealed no substantial deviation from the doctrine, under the circumstances presented herein, since its Louisiana adoption in 1957. Courts of Appeal are bound to follow decisions of the Supreme Court. *United States Fidelity and Guaranty Co. v. Green,* 252 La. 227, 210 So.2d 328 (La.1968), overruled on other grounds, *Creech v. Capitol Mack, Inc.,* 287 So.2d 497 (La.1974). When jurisprudence has consistently established a uniform interpretation, we are obliged to follow that rule absent mandate to the contrary. *Garrett v. Pioneer Production Corp.,* 390 So.2d 851 (La.1980).

We are constrained to follow this rule of loss distribution. Accordingly the judgment appealed from is affirmed at appellant's cost.

The supreme court affirmed our decision. However, without overruling

*Forcum-James,* the majority discussed the policy reasons which barred recovery

under a duty risk analysis. *PPG Industries, Inc. v. Bean Dredging,* 447 So.2d 1058

(La.1984). Despite comments by Justice Calogero in his dissent that the majority was abandoning the rule, and the majority's characterization in *9 to 5 Fashions, Inc., v. Spurney*, 538 So.2d 228 (La.1989), of *PPG* as abrogating the per se exclusionary rule, *Forcum-James* has not been overruled.

Accordingly, we are constrained to follow the actual holdings of the supreme court. Just as the five-judge panel of this court did in *Phillips*, 08-934 (La.App.3 Cir. 4/8/09), 10 So.3d 339, *writ denied*, 09-1504 (La. 10/30/09), 21 So.3d 284, and just as the federal court did in *Wiltz v. Bayer Crop Science*, 645 F.3d 690 (5th Cir. 2011). Today as in 1982, we are not the appropriate court to change this rule of law.

The trial court should be affirmed.

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1405

PATRICK E. PHILLIPS, JR., ET AL.

VERSUS

G & H SEED CO., ET AL.

**PICKETT, J., dissenting.**

I dissent for the reasons assigned by Judge Decuir, and for the additional reasons herein.

Having reviewed the materials and the transcript of the hearing on the motion for summary judgment in the court below, I continue to believe that the analysis in *Phillips v. G & H Seed Co., Inc.*, 08-934 (La.App. 3 Cir. 4/8/09), 10 So.3d 339, *writ denied*, 09-1504 (La. 10/30/09), 21 So.3d 284, is correct. In that case, we dismissed the claims of three bellwether plaintiffs after a full jury trial, finding that they had no cause of action. These three plaintiffs were chosen because their claims were representative of the claims of the defendants before us today. On remand, the remaining plaintiffs had an opportunity to show that they had a proprietary interest in the crawfish and were differently situated than the bellwether plaintiffs. Though the trial court noted that he disagreed with our previous decision, he rightly found that he was bound to follow it and granted the motion for summary judgment and dismissed the claims. The trial court was correct. These buyers and processors of the crawfish cannot recover from the defendants. There were no genuine issues of material fact and there were strictly legal arguments presented below. The trial court should be affirmed and the plaintiff's claims should be dismissed.

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**10-1405**

**PATRICK E. PHILLIPS, JR., ET AL.**

**VERSUS**

**G & H SEED CO., ET AL.**

**PAINTER, JUDGE, CONCURRING.**

I feel that a duty risk analysis is applicable here. The question is how far the risk extends. All parties were not in the same relationship with the crawfish farmers. Many of these cases have different relationships and should not be lumped together. Issues of fact remain. Therefore, summary judgment is not appropriate. I therefore concur in the majority opinion herein..